**STATE of Missouri, Respondent,**

v.

**Anthony WOODS, Appellant.**

**No. 49076.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 24, 1985.

Motion for Rehearing and/or Transfer Denied Jan. 28, 1986.

Application to Transfer Denied March 25, 1986.

Leonard Buckley, Jr., St. Louis, for appellant.

William L. Webster, Atty. Gen., Mary Elise Burnett, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Presiding Judge.

Anthony Woods appeals from a jury conviction of forcible rape, § 566.030 RSMo 1980, felonious restraint, § 565.120 RSMo 1978, and armed criminal action, § 571.015 RSMo 1978.[1] The court sentenced him to twenty years imprisonment on the conviction of forcible rape, five years imprisonment for felonious restraint, and twenty years for armed criminal action. The sentences for forcible rape and felonious restraint are to run consecutively, the sentence for armed criminal action to run concurrently thereto.

On appeal defendant asserts: (1) that the court erred in seating an alternate juror; (2) erred in denying defendant's motion to strike a juror for cause; and (3) erred in denying defendant's motion for a mistrial after striking a portion of the state's rebuttal testimony. The judgment is affirmed.

Since defendant does not challenge the sufficiency of the evidence in this appeal, we will briefly review the facts in the manner most favorable to the verdict. On the morning of October 10, 1983, shortly after 6:00 a.m., P.W., a fifteen year old girl, left her home to meet a friend with whom she planned to take the bus to school. The friend did not arrive so she headed to a home of another friend. It was still dark outside at the time. As she approached the home of her friend, she noticed a man standing on the corner across the street. When P.W. entered the back yard to the house, the man ran up to her, and grabbed her from behind. He put a knife against her neck and told her he would cut her head off if she screamed. He then ordered her to walk to the back of the house. When they reached the back of the house the defendant took off her "panties" and told her to lie down. P.W. saw the man's face as he stood perched over her. He then removed his pants, wrapped P.W.'s leather jacket over her head, and had sexual intercourse with her. Before leaving he told her that he had been watching her and that he would, "get her again" if she told the police. He then removed the leather jacket that had covered her face and left.

The police were called at approximately 6:30 a.m. P.W. gave the police a description of her assailant and was taken to the hospital for tests. The test results dis-

---

**1.** All references are to RSMo 1978, unless otherwise specified.

closed the presence of semen on her underwear and spermatozoa in the vaginal smear taken from her. Later, the police showed a photographic display to P.W., but she was not able to identify the defendant from his photograph due to the different hair style and lighter skin tone in the photograph.

That afternoon P.W. was sitting on the porch of her home with her grandmother and a cousin when the defendant walked by. When he stared at her, she recognized him as her assailant. She informed her cousin that the defendant was the man that had raped her. Shortly thereafter, the defendant was apprehended and held until the police arrived.

In his first point, defendant contends that the trial court erred in excusing a regular juror who had scheduled vacation plans and substituting an alternate juror. During the presentation of defendant's evidence, the court became aware Juror Max, a 26 year old female, had set plans to leave on a vacation with her family the following morning. In camera, she stated that she hadn't revealed her vacation plans during jury selection because she wasn't then aware that the trial would last so long. The court excused Juror Max over defense counsel's objection for the reason that he felt if she were forced to continue she might vent her anger against the court by retaliating against one side or the other.

Pursuant to § 494.065 [2] RSMo 1979, an alternate juror, a 26 year old male was impaneled. Defendant argues that the excusal of Juror Max was improper for the reason that she was not unable or disqualified from performing her duties, but merely "inconvenienced." Furthermore, he asserts that he was prejudiced by "the substitution of a white male juror for a white female juror for the reason that the charges were rape, felonious restraint, and armed criminal action." Beyond this bald allegation, defendant does not offer nor does the record reflect any basis for finding or even assuming that the alternate juror was prejudiced against him.

We do not decide whether the court's action excusing Juror Max was error under these circumstances because we find not a shred of evidence pointing to any prejudice to defendant. Relief cannot be granted where defendant has failed to demonstrate how he was prejudiced by the court's action. *State v. Reynolds*, 422 S.W.2d 278, 284 (Mo.1967); *Williams v. State*, 558 S.W.2d 671, 675 (Mo.App.1977); *State v. Williams*, 659 S.W.2d 298, 300 (Mo.App.1983). Nor do we agree with defendant's contention that the excusal of Juror Max and the substitution of the alternate male juror resulted in the denial of the fair and impartial jury he had chosen. Section 494.065 requires that alternate jurors be selected in the same manner, have the same qualifications, and be subject to the same examination as principal jurors. *State v. Fletcher*, 619 S.W.2d 57, 60 (Mo. banc 1981). Thus, we find no error in the substitution of the juror in this case.

In his second point, defendant assigns as error the action of the trial court in overruling his challenge for cause to venirewoman Bolden, resulting in the use of one of his preemptory challenges to remove her from the jury list.

The record shows that Mrs. Bolden responded in the affirmative when state's counsel asked whether any juror had personally experienced a crime.

> State's Counsel: Is there anything about the nature of that crime that is so strong in your mind that it would influence you in this case so you would not find as a matter of fact that which isn't a fact. In otherwords, would it influence your ability to judge the people who testify here fairly?
>
> Venirewoman Bolden: No, it wouldn't . . .
>
> Defense Counsel: Have you ever had the occasion where you were out on the

**2.** Section 494.065 provides in pertinent part:
Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider the verdict, become or found to be unable or disqualified to perform their duties . . .

street or you were somewhere and then you found out it wasn't that person?

Venireperson Bolden: Yes, I have run into a few cases like that.

Defense Counsel: Do you think that you would consider that in this case?

Venirewoman Bolden: It's possible that it could be, but I doubt it, you know.

Defense Counsel: What do you doubt?

Venirewoman Bolden: O.K. I feel that if she was—like you say, she was fifteen years old, right, I feel that if someone came up on her that close that she should be able to give a description of that face if she doesn't get anything else if somebody was blocked on that person. Do you see what I am saying?

. . . .

Defense Counsel: Correct me if I am wrong. What you're saying, you think in a rape situation because of the close physical contact, a person would be more than likely to make a correct identification than not?

Venirewoman Bolden: Yes.

. . . .

Defense Counsel: For that reason you know at this time that you would be more inclined to believe the victim.

Venirewoman Bolden: No. I am not saying that.

Mrs. Bolden next explained that she had been the victim of a similar crime and that she never forgot the face of her assailant. Defense counsel then asked her whether this experience and her opinion regarding the victim's ability to identify the perpetrator would prevent her from being a fair and impartial juror.

Venirewoman Bolden: I could be fair, but what I am saying, when you ask me do I think that she would be able, as far as identifying him, saying that he actually did do this. I know when something like that do happen to you, if you are caught off balance, it do have you in a state that your mind might come and go. But still, what I am saying, there's something that he could have done or said, could have gave her that.

. . . .

Defense Counsel: Do you have an opinion at this time that a person who had been able to see the face of their assailant, whether it would be from one second to a minute, do you have an opinion whether that person should be able to identify that assailant?

Venirewoman Bolden: Yes I do.

. . . .

Defense Counsel: Do you think that the fear, the emotions, and the stress involved in that type of situation, would make a person's identification more or less reliable?

Venirewoman Bolden: I think that it would make it more.

The following discussion took place at side bar.

Defense Counsel: I would move to strike Mrs. Bolden for cause because she does have an opinion whether a person in a particular type of situation can or cannot identify the assailant. She has an opinion about the situation in this case.

. . . .

The Court: All Mrs. Bolden says was, "I think if somebody gets raped, if they get a good view of that person, can identify them. That's all she said.

In open court, defense counsel related to Mrs. Bolden that the victim believed that the defendant raped her.

Defense Counsel: Given that ... do you have an opinion at this point?

Venirewoman Bolden: No, I don't have.

Defense Counsel: Do you think based on that you would find Anthony Woods guilty?

Venirewoman Bolden: No, I couldn't.

Defense Counsel: You couldn't what?

Venirewoman Bolden: I couldn't say that he was guilty because I haven't heard her opinion as far as what happened to her. I have to hear her side plus his side in order for me to combine to [sic] things together to make one ...

■ Defendant contends that the court below abused its discretion in overruling his motion to strike Venirewoman Bolden

for cause due to her opinion that a rape victim who saw her assailant could make a more reliable identification due to the physical proximity inherent in the act itself.

While the court's refusal to sustain a valid challenge for cause constitutes reversible error, it is well established that the trial court has wide discretion in determining the qualifications of a venireman, and its decision thereon will not be disturbed absence a clear abuse of discretion and real probability of injury to the complaining party. *State v. Betts*, 646 S.W.2d 94, 98 (Mo. banc 1983); *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983).

The trial court determines whether a venireperson is qualified to be a juror by observing his demeanor and evaluating and interpreting his answers to the voir dire questions as they relate to his fairness and impartiality, if he would be chosen as a juror. *State v. Bevly*, 665 S.W.2d 46, 48 (Mo.App.1984). Furthermore, in judging the qualifications of an individual juror, the trial court makes its determination based on the whole examination of the juror. *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982). *cert. denied* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). In no event shall a challenged venireman be allowed to pass upon his own qualifications to serve as a juror; the court rather than the venireman, is impressed with the duty in making this crucial determination. *State v. Land*, 478 S.W.2d 290, 292 (Mo. 1972); *State v. Thompson*, 541 S.W.2d 16, 18 (Mo.App.1976).

Venirewoman Bolden's voir dire testimony does not exhibit the least equivocation in response to questions posed to expose the presence of bias or prejudice. On the contrary, her testimony demonstrates a firm belief that she could be fair and render a verdict on the basis on the facts and law in the case.

Notwithstanding the above, Mrs. Bolden held the opinion that a rape victim could more reliably identify her attacker because of the physical proximity in the act of rape. It has been said that no other crime focuses a female victim's attention on her assail-

ant as intensively as rape. *State v. Berry*, 609 S.W.2d 948, 954 (Mo. banc 1980); *State v. Trimble*, 654 S.W.2d 245, 254 (Mo.App. 1983). As a hypothetical generalization, we find no disqualifying bias in this opinion. Mrs. Bolden's responses taken as a whole indicate that this opinion would not prevent her from independently determining the credibility of witnesses depending on the facts of the case and that she would not give the testimony of the victim any greater weight in making her determination. On this basis and in light of the trial court's ability to view the demeanor of the witness, we find no abuse of discretion.

■ Second, defendant's contends that the trial court failed to undertake an independent inquiry of Venirewoman Bolden concerning her possible bias and impartiality. We disagree. A trial judge has no duty to question a prospective juror further when the answers given by the juror show no bias and where the prospective jurors pledge to give the defendant a fair trial is unequivocal. *State v. Crews*, 607 S.W.2d 759, 761 (Mo.App.1980).

■ In his third point, defendant contends that the court abused its discretion in denying defendant's motion for mistrial for the reason that the court's order to strike an instruction to the jury to disregard Officer Holt's rebuttal testimony as to the $271.00 dollars defendant had on his person at the time of arrest, was insufficient to cure the prejudice to defendant from the "insinuation" that he may have been engaged in other criminal activity. We disagree. Every error which might occur in the trial of a case does not necessarily require the granting upon request of a mistrial. A declaration of a mistrial is a drastic remedy and the authority of a trial court in this respect should be exercised only extraordinary circumstances. A mistrial should be granted only when the incident is so grievous that the prejudicial effect can be removed in no other way. *State v. O'Neal*, 618 S.W.2d 31, 35 (Mo. 1981); *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983). Here the court's remedy was sufficient to cure the harm, if any, to

defendant. Therefore, we find that the court did not err in denying defendant's request for a mistrial.

The judgment is affirmed.

REINHARD and CRIST, JJ., concur.