**STATE of Missouri, Respondent,**

v.

**Ronald Dean CLARK, Appellant.**

**No. 48742.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 29, 1986.

Motion for Rehearing and/or Transfer Denied June 4, 1986.

Application to Transfer Denied July 15, 1986.

testimony has been severely eroded. *See also* 71 A.L.R.2d Later Case Service 449–522.

**886**

Toby H. Hollander, St. Louis, for appellant.

John Lord, Asst. Pros. Atty., Clayton, for respondent.

## GARY M. GAERTNER, Judge.

Defendant, Ronald Dean Clark, appeals from his conviction on one count of rape, section 566.030.3 RSMo Cum.Supp.1984, and one count of sodomy, section 566.060 RSMo Cum.Supp.1984. Defendant received consecutive thirty year prison sentences on each count. We affirm.

Defendant does not challenge the sufficiency of the evidence. Viewed in a light most favorable to the verdict, the evidence establishes the following: On July 28, 1983, the victim, a thirteen-year old girl, was living with her family in an apartment in Overland, Missouri. At approximately five o'clock that afternoon, while the victim was alone in the apartment with her younger brother, defendant arrived at the apartment. The victim knew defendant as a friend of her mother's paramour, and thus admitted him to the apartment. After asking the victim some questions, defendant went to a market next door and purchased a bottle of beer. Defendant returned to the apartment and drank the beer. He then asked the victim if she wanted to go with him to a Venture store, and the victim agreed. Defendant drove to the Venture store and parked his car in a secluded area of the parking lot. He then proceeded to rape and sodomize the victim.

After the assault, defendant drove the victim home. He instructed her to take a bath and not to talk to her little brother about what had happened. The victim bathed and changed her clothes. She then went with her younger brother to a nearby store and called her mother. The victim told her mother about the sexual assault by defendant. The victim's mother then took her to the police. The victim gave oral and written statements to the police.

At trial, the victim identified defendant as her assailant and also identified a tattoo on defendant's right leg. Defendant relied upon an alibi defense at trial, testifying that he was drinking beer in a tavern at the time of the offense. After hearing all the evidence, the jury found defendant guilty of forcible rape and sodomy. The trial court sentenced defendant to thirty years imprisonment on each count, the sentences to run consecutively. Defendant appeals from his convictions and sentences.

■ In his first point on appeal, defendant argues that the trial court erred in denying defendant's motion to quash his indictment because blacks and women were systematically excluded from the grand jury pool. Defendant contends that such discrimination violated his constitutional right to equal protection of the laws.

"The United States Supreme Court has held that a criminal defendant in a state court has a constitutional right to have the grand jury considering his case selected from a fair cross-section of the community." *State ex rel. Garrett v. Saitz*, 594 S.W.2d 606, 608 (Mo. banc 1980). In order to prove that an equal protection violation has occurred, defendant must show that the particular procedure employed for selecting grand juries has resulted in substantial underrepresentation of an identifiable group over a significant period of time. *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977).

In the case at bar, defendant has failed to show that underrepresentation of blacks or women has occurred over any significant period of time. The only statistical data presented by defendant showed the composition of the grand jury pool at the time the grand jury was chosen in May 1983. Although the director of the Department of Judicial Administration testified that this pool had evolved over a period of six to

twelve years, this evidence nevertheless establishes only the degree of underrepresentation at a single point in time. Similar evidence has been consistently held insufficient to prove a prima facie case of discrimination in the grand jury selection process. *See State v. Garrett,* 627 S.W.2d 635, 639 (Mo. banc 1982), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *State v. Baker,* 636 S.W.2d 902, 909 (Mo. banc 1982), *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983). Accordingly, this point is denied.

■ In his second point on appeal, defendant argues that the trial court erred in denying his motion for psychiatric examination of the victim before she testified at trial. Defendant contends that this ruling violated his constitutional right to a fair and impartial trial.

■ No general right of discovery exists for criminal cases in Missouri. Absent some express statutory provision or rule of court, discovery is not permitted. *Westfall v. Enright,* 643 S.W.2d 839, 840 (Mo.App. 1982). Defendant has cited no Missouri statute or rule authorizing a trial court to order a psychiatric examination of a prosecution witness. Our own research indicates that no such statute or rule exists. Defendant's motion was thus properly denied because it exceeded the scope of permissible discovery.

■ Defendant cites several cases from other jurisdictions holding that a trial court has "inherent power" to order a psychiatric examination of the complaining witness, particularly in sex offense cases. *See, e.g., United States v. Benn,* 476 F.2d 1127, 1130 n. 12 (D.C.Cir.1973); *Forbes v. State,* 559 S.W.2d 318, 321 (Tenn.1977). We must decline the invitation to adopt such a rule in Missouri. Rape, incest and other such offenses continue to tear away at the moral fabric of our society. Forcing the victims of these crimes to submit to the indignity and embarrassment of a psychiatric examination could only exacerbate the current situation. We hold, therefore, that in the case at bar the trial court had no authority to order such an examination. Accordingly, this point is denied.

In his third point on appeal, defendant argues that the trial court erred in granting the state's motion for inspection of defendant's body. This point contains three subpoints.

■ In his first subpoint, defendant contends that the state's motion did not comply with Rule 25.06(A) because it did not specify the material or information sought to be disclosed. The motion requested "physical inspection of the Defendant's body." Defendant contends that the state should have specified that it wanted to photograph defendant's upper legs. We find that the motion was sufficiently specific. Accordingly, this subpoint is denied.

■ In his second subpoint, defendant contends that the motion violated Rule 25.06(C) because the trial court did not hear evidence on the necessity of the discovery requested. The court did, however, hold a hearing on the motion before ordering the inspection. We find no error on this subpoint.

■ In his third subpoint, defendant contends that the trial court's order granting the motion violated Rule 25.06(D) because it did not state the reasons for granting the motion. The court's order stated that the intrusion caused to defendant's body by the inspection was "minimal." We find this order sufficient. Accordingly, defendant's final subpoint is denied.

■ In his fourth point on appeal, defendant argues that the trial court erred in refusing to strike one of the veniremen, Mr. Mumbower, for cause. During voir dire, the following colloquy took place between defense counsel and Juror Mumbower:

Q Do you have any children?

A A daughter forty years old.

Q Do you think having a daughter, having gone through raising her up successfully, thinking back to her childhood, would that in any way affect your feelings of sympathy for the child witness that will appear in this case?

A I think back in those days if something happened to my daughter I

would have been very prejudiced about it.

Q I am not asking if you approve of the crime generally. I can see from your answer in talking about your daughter and the type of the crime it obviously brings some pretty strong feelings?

A Yes.

Q Do you think those feelings would interfere in how you would judge the credibility of these witnesses? You understand people are going to be saying different things and you will have to decide what the facts are?

A I would try to be very reasonable.

Q Everybody in the Courthouse wants to think of themselves as fair, reasonable people. We all feel that way. There are things that happen in our lifetime and that is the purpose of this questioning, how your emotions would interfere with our [sic] ability. A young lady already indicated just hearing and having had these experiences herself she already has some questions. Given what you said, do you think that how you feel about the crime generally, in terms of thinking about your daughter, might tend to influence you?

A It is possible.

Q Obviously, you will have to listen to the Judge's instructions and the evidence and try to be fair and impartial. Are you saying there is a possibility your feelings and your reference to your daughter might interfere with that?

A I think I would be fair to the person involved. It has not happened to my daughter.

Q I do not want to belabor it but I just want to be sure. I guess what I am asking you is, if you think there is a possibility. You are the only person who knows your feeling and inside of you and your heart. Do you think your feelings would interfere in judging credibility or in terms of sympathy?

A I would still be fair to the person.

Q My question is, do you think it might interfere with it?

A Possibly.

THE COURT: Mr. Mumbower, could you listen to the evidence from the witness stand and sitting [sic] aside your own feeling base your verdict on the evidence only that you see and hear from the witness stand?

A I would.

The trial court thereafter overruled defendant's challenge for cause.

The principles governing our review of this issue have been frequently and succinctly stated:

"In determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion." [Citation omitted.]

An accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges; denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireperson constitutes reversible error. [Citations omitted.]

In determining when a challenge for cause should be sustained, each case must be judged on its facts. [Citation omitted.] "Errors in the exclusion of potential jurors should always be made on the side of caution." [Citation omitted.]

*State v. Stewart,* 692 S.W.2d 295, 298 (Mo. banc 1985). The critical question in such cases is whether the venireperson has been equivocal or unequivocal in answering questions about his impartiality. *State v. Brooks,* 693 S.W.2d 211, 214 (Mo.App. 1985).

When a prospective juror ultimately states unequivocally that he can be impartial, and when the entirety of the voir dire makes it reasonable for the court to believe the potential juror, the court's exercise of discretion on a motion to strike for cause should not be disturbed

on appeal. [Citation omitted.] However, this rule has no application where the answers of the prospective juror are equivocal and disclose uncertainty about his ability to be impartial.

*State v. Leipus*, 675 S.W.2d 896, 899 (Mo. App.1984).

In the case before us, Juror Mumbower made several equivocal statements when questioned by defense counsel. When asked by the trial judge about his impartiality, however, Mr. Mumbower stated unequivocally that he could be impartial. Furthermore, the prosecutor later questioned Mr. Mumbower about the state's burden of proof under the reasonable doubt standard, and Mr. Mumbower stated unequivocally that he would follow the court's instructions and weigh the evidence fairly and impartially. Viewing the voir dire in its entirety, we find that Mr. Mumbower sufficiently established his ability to act as an impartial juror. We thus hold that the trial court did not abuse its discretion in overruling defendant's challenge for cause.[1]

In his fifth point on appeal, defendant argues that the trial court erred in finding that the victim's eight-year old brother was competent to testify at trial.

In determining the competency of a witness under ten years of age, the court must consider four factors:

(1) present understanding of, or intelligence to understand, on instruction, an obligation to speak the truth; (2) sufficient mental capacity at the time of the occurrence to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity to translate into words the memory of such observations.

*State v. Edwards*, 657 S.W.2d 343, 345 (Mo.App.1983). In the instant case, defend-

ant specifically alleges that the child failed to demonstrate an "independent recollection" of the event. Defendant observes that the police did not interview the child about the assault for over seven months after it happened. Defendant further observes that the child was unable to recall several obvious facts about the date of the crime, such as whether or not he was in school at the time, and that the child's testimony sometimes appeared rehearsed.

In determining whether testimony was based upon independent recollection, we look to the length of time between the event and the trial, whether anyone assisted in the recollection, whether the event was such that it would have a strong impression upon the child, and the consistency of the child's testimony with other witnesses. *State v. Armoneit*, 588 S.W.2d 24, 26 (Mo.App.1979).

In the case at bar, the length of time between the incident and the trial was less than nine months, a relatively short period. The child repeatedly testified, moreover, that no one had assisted him in recalling the events in question. Although the child's testimony was inconsistent and unclear in some respects, such deficiencies affect only credibility of the witness, not his competency. *State v. Sigh*, 579 S.W.2d 657, 658 (Mo.App.1979). Accordingly, this point is denied.

In his sixth point on appeal, defendant argues that the trial court erred in permitting a police officer to testify that the victim had identified defendant in a police lineup. The victim had previously testified about this identification.

Defendant contends that the police officer's testimony violates the rule established in *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972). In that case, a police

---

**1.** We are aware that Judge Blackmar, writing a separate concurring opinion in *State v. Hopkins*, 687 S.W.2d 188, 191 (Mo.App.1985), expressed reservations about the sort of rehabilitation that occurred in the instant case:

In the typical case the trial judge or the prosecutor will ask questions until the juror gives assurance of efforts of impartiality. The sus-

picion remains that the juror's initial reaction persists, and that the assurances are only what might be expected from interrogation by a high authority figure.

We nevertheless believe that our holding remains consistent with the principles set forth in *Hopkins*.

officer testified about the witness's identification of the defendant even though the witness had not been impeached on that issue. The Supreme Court reversed defendant's conviction, holding that a third party's testimony about an out-of-court identification of the accused by the identifying witness is inadmissible unless the identifying witness has been impeached. Mere cross-examination of the identifying witness is insufficient to admit third party testimony about the out-of-court identification. 477 S.W.2d at 63.

In the case before us, the victim was not impeached on the issue of her out-of-court identification of defendant. It would thus appear that the police officer's testimony about that identification was inadmissible. We hold, however, that any error committed by the trial court was necessarily harmless. Error which in a close case may require reversal can be disregarded if the evidence of guilt is strong. *State v. Cook*, 628 S.W.2d 657, 661 (Mo. banc 1982). In this case, the victim identified the defendant in court as her assailant, and identified a tattoo on his right leg. In light of this evidence, the police officer's testimony about the out-of-court identification was relatively insignificant. We thus hold that this error was harmless beyond a reasonable doubt, *State v. Miller*, 650 S.W.2d 619, 621 (Mo. banc 1983), and deny this claim of error.

▆ In his seventh point on appeal, defendant argues that the trial court erred in admitting evidence that defendant had in the past acted violently when he drank. Defendant contends that this character evidence violated his constitutional right to a fair trial because defendant had not put his character or reputation in issue.

In *State v. Milligan*, 654 S.W.2d 204 (Mo.App.1983), defendant was convicted of second degree murder. The evidence indicated that defendant had been drinking prior to the murder. At trial, three witnesses were allowed to testify that defendant acted abnormally and violently when drunk. On appeal, the court held that the trial court erred in admitting this evidence because it constituted an attack on defend-

ant's character when defendant had not put his character in issue:

> [T]he prosecution may not attack the character of the person unless he first puts his character in issue by offering evidence of good character and it is not permitted to show that the defendant has a tendency or disposition to commit the crime of which he is charged.

654 S.W.2d at 209. The court reversed defendant's conviction on the basis of this error.

In the case before us, defendant did not put his character in issue. The trial court thus erred in allowing a witness to testify about defendant's violent nature when drinking. However, not every error in the admission of evidence mandates reversal of a conviction. Only prejudicial error is reversible error. *State v. Teal*, 624 S.W.2d 122, 125 (Mo.App.1981). We find no prejudice in this case. Unlike *Milligan*, where three witnesses testified about defendant's violent nature, here the evidence consisted of a single question to a single witness. Moreover, another witness had testified earlier, without any objection by defendant, that defendant could "drink a lot and not show it." Given this record, we hold that any error committed by the trial court did not cause prejudice to defendant. Accordingly, this point is denied.

▆ In his final point on appeal, defendant argues that the trial court erred in sustaining the state's hearsay objection to evidence of an argument between defendant and the victim's mother's paramour, in which the paramour had threatened to "get" defendant for "ripping off" his drug supply. Defendant contends that this evidence was not hearsay because it was intended only to show potential bias and motive to lie on the victim's part, not to prove that the "rip-off" had actually occurred.

Assuming *arguendo* that the testimony was not hearsay, we nevertheless hold that defendant was not prejudiced by the trial court's ruling. Although the court did not allow testimony about statements made in the course of the argument, defendant was allowed to show that an argument had

occurred. Defendant could also have inquired about the substance and circumstances of the argument without asking for hearsay statements. Finding no prejudice, we deny this claim of error.

The judgment is affirmed.

SIMON, J., concurs.

KAROHL, P.J., concurs in result.