STATE of Missouri,
Plaintiff-Respondent,

v.

Darryl WILLIAMS,
Defendant-Appellant.

No. 50613.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 28, 1986.

Motion for Rehearing and/or Transfer
Denied Dec. 3, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Dave Hemingway, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

DOWD, Presiding Judge.

Appellant was convicted by a jury under § 569.020, RSMo 1979, of robbery in the first degree. The trial court entered judgment on the verdict and sentenced appellant as a persistent offender to a term of thirty years imprisonment. On appeal, appellant contends the trial court committed reversible error: (1) In denying appellant's motion to strike a venireperson who initially indicated that failure of the defendant to take the witness stand in his own defense might interfere with her decision making, and (2) By overruling appellant's objections to alleged inflammatory statements by the prosecuting attorney during closing argument. We affirm.

In his first point, appellant contends he was denied his right to a full panel of unbiased veniremembers before he was required to expend his peremptory challenges. During voir dire, the following exchange was had among the defense counsel, prosecuting attorney, and a potential juror:

[DEFENSE COUNSEL]: I would like to ask this group of six, does anyone here feel that if they sit through a whole trial—it is a serious case—if the man who is charged with a crime does not take the stand to testify, do you feel that would affect your feelings so much that they would draw a conclusion or inference that that person possibly or probably is guilty and that would affect their decision?

[VENIREPERSON] (Indicating.)

[DEFENSE COUNSEL]: Can you explain what your feeling is ...?

[VENIREPERSON]: If he is not guilty, then why can't he stand up and defend himself?

[DEFENSE COUNSEL]: Do you feel like you would have a hard time following the law and not drawing any inference from the fact that he chooses not to testify?

[VENIREPERSON]: That's right.

[DEFENSE COUNSEL]: You would have a hard time?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: And you could not be fair to him if he chose not to testify?

[VENIREPERSON]: Well, I would sure try, but I don't know.

[DEFENSE COUNSEL]: You don't think you could?

[VENIREPERSON]: No.

[DEFENSE COUNSEL]: Those feelings or that speculation would really draw into your verdict?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: Or your decision-making? You think that would really affect your decision-making?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: And even if the law was given to you that you could not draw any conclusions, you can't control your own emotions? Is that your feeling?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: Okay. Even though you are sworn to follow the law, everyone has feelings, I mean permanent feelings about things. And in your case, you have very strong feelings about this?

[VENIREPERSON]: Yes, I have.

[DEFENSE COUNSEL]: And even though you are sworn to follow the law, you don't think it would be fair to him to be sworn as a juror in this case if that's what you chose to do right now?

[VENIREPERSON]: I don't understand what you mean.

\* \* \*

Q [BY DEFENSE COUNSEL]: If you are chosen to sit on this jury you will be sworn to follow the instructions of the Court.

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: Now, the reason why we go through the voir dire process is to let you know what is up ahead, down the road for you, and in this case you are telling us you don't feel like you could follow that particular part of the law?

[VENIREPERSON]: Well, unless—why couldn't he stand up and state that he is innocent?

[DEFENSE COUNSEL]: So that would be an overriding feeling that you would have?

[VENIREPERSON]: That's right.

[DEFENSE COUNSEL]: Even though the law states differently, you could not control that?

[VENIREPERSON]: That's the way I feel about it.

[DEFENSE COUNSEL]: And you feel very strongly; is that correct?

[VENIREPERSON]: Well, no; I could be changed.

[DEFENSE COUNSEL]: You could be changed?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: But right now you are telling us that—

[VENIREPERSON]: That's the way I feel and that's what you asked.

\* \* \*

[DEFENSE COUNSEL]: So, even if you were given an instruction that said you were not to draw any inference or conclusion if the defendant fails to take the stand, you are telling us right now it would be very hard for you?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: That is your feelings, that even if you are sworn to follow the law, you don't think you could follow the law?

[VENIREPERSON]: Yes, I guess I could, yes. But that's the way I feel about it.

\* \* \*

[PROSECUTOR]: [To Venireperson] I want you to think back, okay? I asked you a little while ago, I asked everybody and I asked you to think about it if you are on the jury and the Judge instructs you on the law, now, if there is something about the law that you don't like, would you be able to put that aside and follow the law whether you like it or not?

[VENIREPERSON]: I think I can, yes.

[PROSECUTOR]: You can. Now, most everybody in this room, and I think probably 90 percent of the people have some feelings like you do—in other words, if a man is charged with a crime would you stand up and say something, what you've already said?

[VENIREPERSON]: Yes.

[PROSECUTOR]: All right, now that's a natural feeling. What I want to ask you is this: Let's assume that you are on the jury, okay, and that the defendant does not testify, which he has a right to do. Do you understand that?

[VENIREPERSON]: Yes.

[PROSECUTOR]: Now, further that Judge Kitchin instructs you along with the other jurors that a defendant has the right not to testify and that no inference can be made from that of his guilt and that you cannot hold that against him to his prejudice—that is the law of the State of Missouri.

[VENIREPERSON]: I understand that.

[PROSECUTOR]: That's the law of the United States. Now, if you are on the jury, even though your natural reaction would be you would expect the defendant to testify, would you follow the instruction?

[VENIREPERSON]: Oh, yes; I will.

[PROSECUTOR]: Will you do it even though you—

[VENIREPERSON]: I feel that way?

[PROSECUTOR]: Yes.

[VENIREPERSON]: Yes, I will. I have to.

[PROSECUTOR]: Are you certain of that? You are under oath right here as you stand here.

[VENIREPERSON]: Yes.

[PROSECUTOR]: You understand?

[VENIREPERSON]: Yes.

[PROSECUTOR]: Even though you don't like the situation and even though you would expect differently, should it come to pass that the defendant does not testify and Judge Kitchin instructs you that you cannot hold that against him and that no inference of his guilt can be drawn from his failure to testify—

[VENIREPERSON]: I understand.

[PROSECUTOR]: Will you follow that?

[VENIREPERSON]: Yes, I will.

[DEFENSE COUNSEL]: Let me ask you a question: Do you think that having that feeling that, you know, person [sic] feeling about the defendant's refusal to testify, do you think that just might change or taint your view of the evidence in general, that it might interfere with that in some way, be hard for you to put those personal feelings aside?

[VENIREPERSON]: I don't think so.

[DEFENSE COUNSEL]: Could you put it completely aside?

[VENIREPERSON]: Yes, I think I could. I'm just telling you the way I felt.

[DEFENSE COUNSEL]: You think you could put it aside?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: Are you sure of that?

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: Because if you don't think you can, that's perfectly all right.

[VENIREPERSON]: Yes, I think I can.

[PROSECUTOR]: Nothing further.

\* \* \*

[DEFENSE COUNSEL]: I would like to make a motion to strike.

THE COURT: Well, she stated now very unequivocally that she will absolutely follow the instructions, follow the law if it comes to pass that I give the instruction and he does not testify, and she can put her own view of what she thinks the law ought to be—that is what she's saying—out of her mind. She's very adamant that she could, in fact, and I have no reason not to believe her. So the motion will be denied.

■ The trial court denied defense counsel's motion to strike for cause on grounds the venireperson stated unequivocally that she would absolutely follow the court's instructions and that the juror was very adamant in her belief that she could put her own view of what the law should be out of her mind. A ruling by a trial court determining the qualifications of a prospective juror should not be disturbed unless the record shows a clear and manifest abuse of that discretion. *State v. Stewart*, 692 S.W.2d 295, 298 (Mo. banc 1985).

■ While it is true that review is more searching where the trial court does not independently interview the witness, *State v. Wolff*, 701 S.W.2d 777, 778 (Mo.App. 1985), in situations such as here where the opposing attorneys were exhaustive in their explanation of the law and questioning of the venireperson, it would have been redundant for the trial court to have intervened. The potential juror ultimately stated with conviction that she could put her personal feelings aside and follow the court's instructions. A trial judge has no duty to question further a prospective juror when the answers given by the juror show no bias and where the prospective juror's pledge to give the defendant a fair trial is unequivocal. *State v. Woods*, 705 S.W.2d 76, 80 (Mo.App.1985); *State v. Evans*, 701 S.W.2d 569, 574 (Mo.App.1985).

■ The personal beliefs of a juror as to the merits of the law are immaterial except when they are so unyielding as to prevent a juror from following the court's instructions. *State v. Betts*, 646 S.W.2d 94, 99 (Mo. banc 1983). As this court recently stated, the critical question in determining the objectivity of a potential juror is "whether the venireperson has been equiv-

ocal or unequivocal in answering questions about his impartiality." *State v. Clark,* 711 S.W.2d 885, 889 (Mo.App.1986). This determination is made on the basis of the entire examination. *State v. Smith,* 649 S.W.2d 417, 425–26 (Mo. banc 1983), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

In initial questioning, the venireperson here elicited a natural response by one unfamiliar with the law, that she would expect defendant to testify in his own behalf. After being instructed that the law provides the defendant a right not to testify and that failure to do so cannot be held against him, the venireperson unequivocally stated she would follow the law. In response to the prosecuting attorney's question that even though her natural reaction would be to expect the defendant to testify would she follow the instruction, she answered "Oh yes; I will." When asked will you do it even though you feel that way, she responded "yes I will, I have to." Asked whether she was certain of that, she answered "yes." Defense counsel then questioned the venireperson as to whether she was sure she could put her feelings aside to which she responded "yes."

■ The Supreme Court in *State v. Pennington,* 642 S.W.2d 646, 649 (Mo.1982), and subsequent decisions by this court, have held that where a venireperson expresses an initial reservation about a defendant's failure to testify but then ultimately indicates he could put those feelings aside and follow the court's instruction, there is no abuse of discretion by allowing the potential juror to sit.[1] *State v. Robinson,* 684 S.W.2d 529, 531 (Mo.App.1984); *State v. Johnson,* 670 S.W.2d 882, 887 (Mo. App.1984). Likewise, recent cases of this court addressing the issue of juror impartiality have upheld the trial court's refusal

to strike a juror for cause where that venireman has initially made equivocal statements as to his impartiality but eventually vowed to follow the court's instruction and weigh the evidence fairly. *Clark, supra,* at 890; *Evans, supra,* at 572–73.

■ As an appellate court, we should not be hasty in undermining a trial court's ruling on the qualifications of a prospective juror. The trial judge is in a better position to make this determination as he is able to evaluate the venireperson's answers based on an observation of his demeanor. *Smith, supra,* at 422. A mere examination of the impersonal record, without benefit of the venireman's demeanor as the trial court had, leads us to conclude she was decisive in her belief that she could put her personal feelings aside and be an impartial juror. Point one is denied.

In his second point, appellant contends he was denied a fair trial in that prosecutorial misconduct denied him a verdict based solely on the merits of the evidence. Appellant cites several alleged acts of misconduct by the prosecutor. In response to defense counsel's plea to the jury that despite his unkept appearance, her client was a human being and the jury should give considerable thought before sending him to prison, the prosecutor made the following statement: "Now, she talks about him being a human being, okay? There is no evidence, obviously he's sitting here but there is no evidence as to what kind of a person he is except from [his wife] who has every motive, I submit to you—." Appellant contends the prosecutor thereby stated he was not a human being and commented on his failure to testify. The trial court found the prosecutor's statement to be retaliatory and not a comment on appellant's failure to testify, but a statement on appellant's lack of character evidence.

---

**1.** In the recent decision of *State v. Stewart, supra,* the Missouri Supreme Court held that failure to strike a venireperson for cause, whose voir dire responses indicated her ability to weigh the evidence would be effected by the defendant's failure to testify, was reversible error. The voir dire responses of the venireper-

son in *Stewart* differ dramatically from those elicited by the potential juror here. In *Stewart,* the venireperson's responses were vacillating. The potential juror there never decisively stated she could disregard her personal views and follow the law as instructed.

Appellant also cites as inflammatory a statement by the prosecutor that defense counsel cried in order to appeal to the jury's emotions. The trial court ruled the statement was simply argument of counsel. Because the trial judge was not looking at defense counsel at the time in question, he left it to the jury, at whom defense counsel was facing, to determine whether or not she had cried.

█ We find appellant's contentions without merit. A trial court has broad discretion in controlling closing argument of counsel as "it is in a better position to observe the contested incidents and to determine their prejudicial effect upon a jury." *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982). Appellate courts will reverse for such error only if the trial court clearly abuses its discretion. *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985).

█ In answering arguments of defendant's counsel, a prosecutor can go further by way of retaliation than he would be authorized to do in the first instance. *State v. Hammond*, 578 S.W.2d 288, 290 (Mo.App.1979). Moreover, an appellate court will not disturb a trial court's decision, when the prosecutor has allegedly referred to the defendant's failure to testify, unless the references are "direct" and "certain." *State v. Robinson, supra*, at 426. The use of the words "accused" and "testify" are crucial to the determination of whether the state has made a "direct" and "certain" reference. *State v. Frankoviglia*, 514 S.W.2d 536, 541 (Mo.1974).

█ We find no clear abuse of discretion. Whether or not defense counsel cried before the jury, the trial court found no prejudice since the jury, who faced counsel, was in the best position to make that determination. Although the prosecutor's remark can be understood to say appellant is not a human being, the statement was made in retaliation to defense counsel's appeal to the jury, and the prosecutor is therefore afforded more leeway. Likewise,

we fail to find a "direct" and "certain" comment on appellant's failure to testify as there was no use of the words "accused" or "testify." Point two is denied. The judgment is affirmed.

REINHARD, J., concurs.

PUDLOWSKI, J., dissents in separate opinion.

PUDLOWSKI, Judge, dissenting.

I respectfully dissent.

An accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges. The failure of a trial court to excuse for cause a partial or prejudiced venireman denies the accused this right and constitutes reversible error. *State v. Stewart*, 692 S.W.2d 295, 298 (Mo. banc 1985). In determining the qualification of a venireman, the court is vested with wide discretion and the court's ruling will not be disturbed absent a clear abuse of discretion. However, our review of a trial court's action will be more searching when, as here, the trial court fails to independently examine the particular juror. *State v. Wolff*, 701 S.W.2d 777, 778 (Mo.App.1985). Finally, "[e]rrors in the exclusion of potential jurors should always be made on the side of caution." *State v. Carter*, 544 S.W.2d 334, 338 (Mo. App.1976).

The venireman in this case initially opined: "if he (the appellant) is not guilty, then why can't he stand up and defend himself." Seizing on that, the defense counsel then re-enforced the prejudice via a series of questions. The prosecution next attempted to rehabilitate the venireman. Finally, the defense counsel attempted to weaken the rehabilitation and the venireman's once firm answers to the rehabilitation waivered ("Yes, I think I can."). As in *Stewart*, no questions were asked by the trial court.

The majority agrees that our review of such cases is more searching when the trial court does not independently interview the witnesses, but then goes on to hold that when the opposing attorneys are exhaus-

tive in their explanation of the law and questioning of the venireman, the necessity for an independent questioning by the trial court becomes redundant. I would characterize the questioning by both the prosecutor and defense counsel as exhausting rather than exhaustive.

When the venireman becomes a badminton birdie knocked back and forth over the net by aggressive counsel who are attempting to mold a bewildered venireman's responses to fit their game plan, I believe it becomes absolutely necessary for the trial court to step in and preserve our judicial process. This is no game. The venireman here responded to the great proportion of interrogation with answers such as: "That's right;" "Yes," "No," "Well, no; I could be changed;" "Yes, I guess I could," "I think I can, yes;" "Oh yes; I will;" "Yes, I will. I have to;" etc. In short, her answers once certain became equivocal depending on questions asked and we never learned if she truly could have put aside defendant's assertion of his fifth amendment rights. In fact, wherever the venireman volunteered more than a simple retort, she conspicuously betrayed her uneasiness with a silent defendant. ("Well, unless— why couldn't he stand up and state that he is innocent?" or "If he is not guilty, then why can't he stand up and defend himself?")

I agree that the trial court need not strike every venireman who admits to an expectation that an accused ought to testify in his own defense. Also, I see less need for trial court intervention when the venireman fully articulates an unequivocal view that he will not draw inferences of guilt from the failure to testify. But rehabilitation must consist of more than docile affirmative responses to rapid fire leading questions from the prosecutor. Cases such as this one cry out for the trial court to intervene and discover the true beliefs of the venireman. Here the trial court did not and I am left with the distinct impression that defendant was denied his right to an impartial panel.