STATE of Missouri, Respondent,

v.

Juan WILBORN, Appellant.

Juan WILBORN, Appellant,

v.

STATE of Missouri, Respondent.

No. 57351.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 21, 1991.

Beverly A. Beimdiek, Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Juan Wilborn, appeals from his jury convictions of rape and sodomy. The trial court sentenced appellant as a prior, persistent and class X offender to consecutive fifteen year terms of imprisonment. We affirm appellant's rape conviction but reverse and remand his conviction of sodomy.

On November 22, 1988, appellant was living with his girlfriend and her six children. Appellant's girlfriend and five of her children left the house early that afternoon and the victim, appellant's girlfriend's seven year old daughter, arrived home from school around 3:30 p.m. Only the appellant was at home.

Some time thereafter, appellant asked the victim whether she wanted to do the "nasty stuff," to which she refused and attempted to leave. Appellant stopped her, removed her clothes and had sexual intercourse with her. Appellant then turned the victim over, inserted his fingers into her rectum and then inserted his penis into her rectum.

The victim indicated to her mother that appellant had done something to her that afternoon, but the victim did not elaborate. The victim's mother arranged for the victim's father, who was not the appellant, to keep her that evening. The victim called her mother the next day and described what had happened.

The trial of the matter commenced on July 31, 1989. The jury returned its verdicts of guilty on August 2, 1989, and this appeal followed.

Appellant claims error in the trial court's refusal to strike for cause two members of the venire who appellant claims should have been removed. Appellant claims that Venireperson Ludwig expressed an inability to fairly and impartially judge the testimony of the child witness, the victim in this case. The relevant portions of Mr. Ludwig's voir dire follow:

MISS BEIMDIEK (Appellant's attorney): Mr. Ludwig, how do you feel about that? Do you think kids can just lie about something like this?

VENIREMAN LUDWIG: I don't think that kids would lie about it, it's too serious of a matter.

MISS BEIMDIEK: It's so serious that nobody would ever make something like this up?

VENIREMAN LUDWIG: That's right.

\* \* \* \* \* \*

MR. MOSS (Prosecution): Is there anyone here that isn't going to wait to hear what that child has to say before they make up their minds whether or not the child is telling the truth or lying? All right. Mr. Ludwig, the last question I asked I would specifically direct to you. You don't think that children will always tell the truth about some things and sometimes lie about others, do you?

VENIREMAN LUDWIG: No.

MR. MOSS: Okay. You are willing to evaluate what any given child would testify to before you might say—

VENIREMAN LUDWIG: Right.

MR. MOSS: Would it be true, would a true statement be, what you're saying is, you got to wait to hear what the child says before you can decide whether or not they are telling the truth or not?

VENIREMAN LUDWIG: Yes.

At the conclusion of the attorneys' questions, the court summoned Mr. Ludwig to the bench and inquired regarding Mr. Ludwig's ability to judge the credibility of a witness.

THE COURT: Mr. Ludwig, step up here a minute, would you please. I didn't exactly follow your answers to some of the questions. Are you saying that under no circumstances, if you get on this jury, could you consider that the girl may be lying?

VENIREMAN LUDWIG: No, I don't say that.

THE COURT: Then you said something about there's records and other documents that have to be—

VENIREMAN LUDWIG: When the girl gets up there, you got witnesses for the hospital and all of that just to be sure that she's telling me the truth, you know,

but I don't—it's—I don't think a little girl would lie, but it's not impossible.

THE COURT: Well, are you willing to conceive the possibility that a seven or eight year old child can lie about crimes of this kind?

VENIREMAN LUDWIG: Yeah, sure.

THE COURT: And could be falsifying her testimony? Are you willing to consider that, that could happen?

VENIREMAN LUDWIG: It could.

THE COURT: Now, is there any question about that at all?

VENIREMAN LUDWIG: No.

THE COURT: You understand, generally speaking, witnesses all have to be treated the same. You can't give any extra weight to any witness because they're who they are. For example, if a clergyman took the stand, you couldn't give him any extra weight to a clergyman's testimony solely because it was a cleryman (sic). And since I'm standing here, if a Judge was a witness and took the stand, you couldn't give the Judge any extra credibility over and above any witness just because that person was a Judge.

VENIREMAN LUDWIG: You couldn't be bias, you know.

THE COURT: You couldn't give him any extra credibility because of who we are. She is, the same is true with a seven year old child as a witness solely and only because of that reason, you cannot give them any extra credibility as a witness, any witness, any age with any business or occupation. It's possible they're telling all the truth, some of the truth, or none of the truth. That's just human behavior. Would you agree to that?

VENIREMAN LUDWIG: Yeah.

THE COURT: Now, is there any question about that. You can consider that that's a possibility and that's all both lawyers are getting at with the possibilities because each has a side to represent and an advocate and it's up to the jury to determine what is the truth and what isn't, same as this even if it was a civil auto accident case. Now, can you fully and completely consider that a child that age could lie about offenses and crimes of this type and nature?

VENIREMAN LUDWIG: (Nodding head)

THE COURT: Now, you are nodding your head yes, is that right?

VENIREMAN LUDWIG: Yes.

THE COURT: Is there any question about that?

VENIREMAN LUDWIG: No.

The denial of a legitimate request to excuse for cause a partial or prejudiced venireman constitutes reversible error. *State v. Wheat*, 775 S.W.2d 155, 158 (Mo. banc 1989). The venireman, to qualify as a juror, must be able to enter upon jury service with an open mind, free of bias and prejudice. *Id.* The determination of whether a juror is unqualified, and thus should be stricken for cause, lies within the broad discretion of the trial court after consideration of the entire voir dire. *Id.* This discretion was not abused in the case at bar.

It is true that Mr. Ludwig appeared to equivocate when asked whether he believed that a young child would lie about the type of circumstance present in this case. However, during the prosecutor's questioning, Mr. Ludwig indicated that he would wait to hear the child's testimony before evaluating her credibility. The trial court further meticulously questioned Mr. Ludwig about his ability to fairly judge the credibility of a young child and Mr. Ludwig expressed no equivocation about his ability to do so.

In *State v. Clark*, 711 S.W.2d 885 (Mo. App., E.D.1986), this court was faced with a venireperson who stated at one point during voir dire that his feelings of sympathy for the thirteen year old victim of rape may interfere with his ability to gauge the credibility of the witnesses. The trial court then asked the venireperson whether he could set aside his feelings and base his verdict on the evidence at trial to which he answered affirmatively. *Clark*, 711 S.W.2d at 889.

This court held that the court's refusal to strike the venireperson for cause was not

error. *Id.* at 890. *Clark,* specifically noted that the venireperson in question unequivocally stated when questioned by the court that he could be impartial. *Id.* This court also pointed out that the venireperson had stated unequivocally later during the voir dire that he could follow the judge's instructions and weigh the evidence fairly and impartially. *Id.*

Likewise, in the case at bar Mr. Ludwig unequivocally responded that the fact he had grandchildren would not make him more or less likely to believe the victim's testimony. The trial court, on more than one occasion, aptly recognized that Mr. Ludwig's response regarding his grandchildren supported the court's belief that Mr. Ludwig was qualified to sit as a juror. We agree and find no abuse of discretion regarding Venireman Ludwig.

■ Appellant also claims that the court should have sustained his motion to strike Venireman Bolhefner for cause based on Mr. Bolhefner's answers to appellant's attorney's questions regarding whether the venire would have to hear appellant testify at trial before finding him not guilty. The relevant portion of Mr. Bolhefner's voir dire is as follows:

MISS BEIMDIEK (Appellant's attorney): ... Do you think that you have to hear Juan testify before you could vote him to be not guilty?

\* \* \* \* \* \*

MISS BEIMDIEK: Okay. Does anybody feel that way? That they would have to hear him. Mr. Bolhefner?

VENIREMAN BOLHEFNER: Yeah, I think I would have to hear him. I think somebody should have to stand up for themselves.

MISS BEIMDIEK: If the Judge told you you couldn't take that into account at the end of the case, do you think you could separate what you just said and go ahead and give him a fair trial without—

VENIREMAN BOLHEFNER: That's right, I'd have to eliminate that.

MISS BEIMDIEK: Do you think you could follow that instruction from the Judge?

VENIREMAN BOLHEFNER: Yes.

MISS BEIMDIEK: Even though you really believe deep down in your heart you should hear both sides?

VENIREMAN BOLHEFNER: I think somebody should stand up, but I think that if the Judge told me not to I would have to judge otherwise.

MISS BEIMDIEK: Do you think that's going to nag at you at all when you go back to deliberate, you're going to think he should have gotten up and told me?

VENIREMAN BOLHEFNER: That's hard to say. I have to hear the case. I haven't heard nothing yet.

MISS BEIMDIEK: Okay. Unfortunately I have to get an answer from you though whether you think maybe it's going to bother you if he does nothing.

VENIREMAN BOLHEFNER: It might have some influence.

\* \* \* \* \* \*

MR. MOSS (Prosecutor): ... Obviously, I think every normal human being would have a preference to hear from the other side, would like to hear from someone accused, all right. We would all like that. But, the fact that we may like it should not influence our decision. We must not use a failure to testify as evidence of guilt. Is there anyone here that despite their liking to hear from accused person, that they would translate that into evidence that he's guilty if he doesn't testify? Mr. Bolhefner, would you use it as evidence of his guilt if he didn't testify?

VENIREMAN BOLHEFNER: I wouldn't say I'd have to take what the evidence was.

MR. MOSS: That doesn't state a preference for liking to hear from him, right?

VENIREMAN BOLHEFNER: That's right.

In *State v. Carpenter,* 757 S.W.2d 283 (Mo.App., E.D.1988), a venireman stated during voir dire that he would like to know why the defendant did not want to "get up and speak for himself." *Carpenter,* 757 S.W.2d at 284. The defendant's attorney then asked whether he would doubt the

defendant's innocence[1] if he did not hear the defendant testify. The venireman responded that he would not be affected by the defendant's failure to testify and later indicated that the charges against the defendant would have to be proven. *Id.* at 284–85. This court affirmed the trial court's refusal to strike the venireman for cause. *Id.*

In our case, Mr. Bolhefner did state that he thought that the appellant should have to "stand up" for himself. However, he also stated that he could follow the instructions of the judge and that he would eliminate his desire to hear from the appellant if so instructed by the judge.

Immediately after the prosecutor finished questioning Mr. Bolhefner regarding his use of the appellant's silence as evidence of guilt, the prosecutor asked the entire panel whether any one of them would use the appellant's failure to testify as evidence of his guilt, even if instructed otherwise by the court. No one, including Mr. Bolhefner, responded.

Mr. Bolhefner's responses evinced a willingness to follow the court's instructions and not draw an adverse inference from the appellant's failure to testify. The trial court has a unique opportunity to observe the venire panel during voir dire and we do not see how the court could be convicted of error regarding either Venireman Ludwig or Venireman Bolhefner. Point denied.

■ Appellant also asserts error in the submission of the sodomy verdict director claiming that it allowed the jury to convict appellant based on facts which could not constitute the crime of sodomy under RSMo § 566.060.3 (1986). Appellant did not raise this issue in his motion for a new trial, therefore, we shall review his claim under the plain error Rule 30.20. The relevant portion of the verdict director stated:

As to Count II if you find and believe from the evidence beyond a reasonable doubt:

First, that between the hours of 3:30 p.m. and 6:00 p.m. on November 22, 1988 in the City of St. Louis, State of Missouri, the defendant inserted his fingers or penis in the rectum of [victim] ...

Missouri Revised Statutes § 566.060.3 states that:

.     .     .     .     .

3. A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old.

The statutory definition of "deviate sexual intercourse" is:

(2) **"Deviate sexual intercourse"** means any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person;

RSMo § 566.010.1(2).

The statute, thus, requires that for deviate sexual intercourse to occur, the genitals of one person must be involved. Two recent cases have held that the act of placing fingers into the rectum of another does not constitute deviate sexual intercourse under the statute since the genitals were not involved. *State v. Keil,* 794 S.W.2d 289 (Mo. App., E.D.1990); *State v. Hooker,* 791 S.W.2d 934 (Mo.App., S.D.1990). In both *Keil* and *Hooker,* the jury was instructed to find the defendant guilty of sodomy if it found that the defendant inserted his finger into the victim's rectum. *Keil,* 794 S.W.2d at 291; *Hooker,* 791 S.W.2d at 937–38.

The instruction in our case similarly allowed the jury to convict appellant of sodomy if it felt that he placed his fingers in the victim's rectum.[2] Therefore, appellant's sodomy conviction cannot stand and must be reversed. *Keil,* 794 S.W.2d at 291; *Hooker,* 791 S.W.2d at 938 (decided under

---

**1.** The quoted portion of the attorney's voir dire question reveals that the question was unartfully stated. We assume the attorney in *Carpenter* was intending to query the venireman about his harboring any doubt regarding the defendant's innocence.

**2.** Since the instruction disjunctively enabled the jury to convict appellant if they found that he placed his fingers or penis in the victim's rectum, it is impossible to determine on which basis they convicted him.

plain error review). Appellant asserts for the first time in his reply brief that double jeopardy would prevent us from remanding this case for a new trial. Since appellant cannot raise new matters in his reply brief, this assertion is not properly raised. However, we will briefly address the double jeopardy question ex gratia.

■ The Missouri Supreme Court recently addressed the issue of double jeopardy in *State v. Urban*, 796 S.W.2d 599 (Mo. banc 1990). In *Urban*, the defendant was convicted on one count of a two count petition of child abuse by photographing a child less than seventeen years old engaging in a prohibited sexual act. The trial court found either that the information did not properly charge the defendant with a crime or the evidence was insufficient to support the charges, but granted the defendant a new trial, allowing the State to amend the information. The defendant was convicted on the amended information based on the same conduct which supported his first conviction. *Urban*, 796 S.W.2d at 600-01.

The Missouri Supreme Court, following the holding of *Grady v. Corbin*, — U.S. —, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), held that the defendant's trial on the amended information violated double jeopardy since it was based on the same conduct alleged in the invalid information. *Urban*, 796 S.W.2d at 601. However, the *Urban* court stressed that, in *Urban*, either the information did not state an offense, in which case the court had no jurisdiction to grant a new trial, or the evidence was not sufficient to support the verdict, in which case the court would not be entitled to proceed with a new trial. *Id.* at 602.

In *Keil*, the defendant was charged with sodomy and the evidence supported only that the defendant placed his fingers in the victim's rectum. This court, in *Keil*, did not determine whether an attempt to later charge the defendant with sexual abuse in the first degree would constitute double jeopardy. *Keil*, 794 S.W.2d at 291 n. 1.

In the case at bar, however, only one of the disjunctive submissions in the verdict director was improper. There is no claim by appellant in this case that the indictment was insufficient, nor is there any claim that the evidence was insufficient to support a submission alleging appellant placed his penis in the victim's rectum.

Therefore, we are not presented with what *Urban* found violative of double jeopardy. We are also not faced with a *Keil* type case, where no submissible case was made under the information.

The Missouri Supreme Court, in *Urban*, specifically held that their holding would not apply where there had been an acquittal of one count and conviction on another properly joined count which was then set aside for trial error, with a new trial being held on the same charge. *Urban*, 796 S.W.2d at 603. That is analogous to the situation at bar. The trial error, an improper jury instruction, necessitates that we remand the case for a new trial on the same charge.

Appellant's last point concerns the trial court's alleged misinterpretation of RSMo § 558.026.1 regarding sentencing. Appellant claims that the trial court had acted under the impression that RSMo § 558.-026.1 required that sentences for multiple counts of rape and sodomy must run consecutively. *State v. Burgess*, 800 S.W.2d 743 (Mo. banc 1990) declared that the sentencing court has discretion to run the sentences concurrently. *Burgess*, 800 S.W.2d at 744. However, since our decision requires that appellant's sodomy conviction be reversed, appellant's point is moot.

Appellant's conviction and sentence on the charge of sodomy is reversed and remanded for a new trial.

CRIST and AHRENS, JJ., concur.