**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Antonio CAROTHERS, Defendant–Appellant.**

**No. 52336.**

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 24, 1987.

Motion for Rehearing and/or Transfer Denied Dec. 22, 1987.

Application to Transfer Denied Feb. 17, 1988.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

JOSEPH J. SIMEONE, Senior Judge.

This is the second appeal in this case. The first conviction was reversed by this Court. *State v. Carothers,* 710 S.W.2d 370 (Mo.App.1986), and the defendant was retried.

This appeal is from the retrial which resulted in a jury conviction of manslaughter. The jury was instructed on murder second degree, manslaughter and self-defense. The appellant alleges trial court error in (1) refusing to give an involuntary intoxication instruction MAI–CR2d 3.30.2, because there was evidence to support it and (2) in overruling appellant's objection to prosecutorial argument which referred to the state's ability to present witnesses who could refute the appellant's evidence relating to the turbulent and violent character of the victim, Ray McKinney. We affirm.

On December 14, 1983, the appellant Antonio Carothers met his friend, Ray McKinney at McKinney's home on Carter Avenue in the City of St. Louis. The two walked to buy beer at a nearby liquor store. After they bought the beer and on the return trip to McKinney's house, the victim asked Carothers if he had a cigarette. Carothers replied he did not. Then McKinney asked if Carothers had a "light"; Carothers handed McKinney the beer and reached in his

jacket for a light. McKinney then gave Carothers a cigarette which Carothers lit and smoked. After walking about a block, McKinney asked Carothers for his cigarette, but Carothers had smoked it and thrown it away. McKinney was upset about the loss of his "$10.00" cigarette, which Carothers testified he then believed to contain PCP. McKinney subsequently "grabbed" Carothers by his jacket and waist band, hit him, threw him down and choked him. After an unsuccessful attempt to escape, appellant drew a .38 caliber Smith and Wesson from his jacket which he carried for his protection, and shot McKinney in the back. The forensic pathologist testified that this bullet, angling in the back and settling in the chest cavity, was the ultimate cause of death.

Carothers adequately remembered all the events up to this point, but he testified that he remembered nothing thereafter. One witness for the state testified that on the evening of December 14, 1983, he looked out his back window and saw two persons in his back yard, one lying on the ground and the other standing and waving a "shiny object" up and down. After a while the second man proceeded to the witness's wood pile and took a large post, and went to the person on the ground and moved the wooden post "up and down." The witness then went next door to his landlady and asked her to call the police. The police came and found Carothers and the deceased, Ray McKinney. At the scene Carothers appeared dazed, his hands were bruised and blood was on his clothing. He did not answer any questions but obeyed the commands of the officer. The next day Carothers was interrogated and told the police he did not remember anything after firing the shot and that he killed the victim because McKinney upset him. Carother's hands were bruised, as shown by photographs introduced at trial, blood was found on the gun and samples of the victim's hair were found on the appellant's gun. The forensic pathologist testified that there were injuries to the victim's head which appeared to indicate that the victim was "pistol whipped," and that these injuries occurred while McKinney was still alive.

In the defendant's case in chief, the appellant testified and stated that McKinney was upset about Carothers smoking his costly PCP cigarette and that when McKinney told him the cigarette cost him $10.00, Carothers realized that it was "laced" with PCP. A small bottle was found on the victim which contained several ounces of PCP. Appellant also testified that after firing the first shot, (there may have been more) he could remember nothing until some time later. His testimony concerning the cigarette contained several inconsistencies which the jury apparently found to lack credibility.

During the defendant's case, several witnesses testified as to the violent and turbulent nature of the victim, McKinney. The state did not introduce any rebuttal witnesses on this issue to offset these characteristics of the victim, but in the closing argument, the prosecutor argued to the effect that "reputation evidence amounts to a swearing match" and the state could have brought in witnesses to show that the deceased was a "nice guy" and the defendant "was a brute." An objection was made, but overruled. No motion was made to disregard the evidence or for mistrial. The defense attorney in closing argument seized upon the prosecutor's statement and refuted it.

The court instructed the jury on murder second degree, manslaughter, and self-defense. The court refused an offered instruction on involuntary intoxication because it believed the defenses under the evidence were mutually exclusive since the shooting in "self-defense" required an intent and under involuntary intoxication there is no intent.

The jury found the appellant guilty of manslaughter and of carrying a concealed weapon. After a motion for new trial was overruled, and allocution given, the court sentenced the appellant as a persistent offender to fifteen years for manslaughter and five years for carrying a concealed weapon.

On appeal, appellant raises the two contentions stated above. Appellant relies

upon the general principle that a defendant is entitled to have any "theory of innocence submitted to a jury, however improbable that theory may seem, so long as the most favorable construction of the evidence supports it." *State v. Kinard,* 245 S.W.2d 890, 893 (Mo.1952). We also recognize the rule relied upon that an "instruction which affirmatively eliminates a theory of innocence or a defense is erroneous." *Id.* (theory of defense was that injuries causing death were caused by others, not defendant); *State v. Jones,* 627 S.W.2d 322 (Mo. App.1982) (failure to give both instructions on self-defense and instruction on defense of another person authorized was error when supported by "evidence").

Nor do we have difficulty with appellant's assertion that a defendant is entitled to an instruction which supports any theory of innocence, even if the theories are inconsistent. *State v. Lora,* 305 S.W.2d 452, 455 (Mo.1957) (theories of insanity and alibi are not inconsistent); *State v. Morris,* 248 S.W. 2d 847, 853 (Mo.1952) (insanity and self-defense); *State v. Baker,* 277 S.W.2d 627, 629–630 (Mo.1955) (self-defense and accident, although inconsistent, may be submitted if evidence is offered by state or proved by third person, not defendant); *cf.* § 563.070, R.S.Mo., 1986.

But these general principles do not resolve this case. In the case at bar, the appellant's theory of involuntary intoxication was not offered by third persons, but by appellant so that under the authority of *State v. Baker, supra,* the court did not err in refusing the involuntary intoxication instruction. The trial court stated that in this case the defense upon which an instruction was given and involuntary intoxication was mutually inconsistent—one requiring an intent and the other negating an intent. All the evidence on involuntary intoxication came from the defendant. We agree with the conclusion of the trial court. In this case the defenses were mutually exclusive so that there was no error.

Furthermore, whether an instruction on involuntary intoxication is to be given in a manslaughter case is dependent upon several factors. First, under the present statute effective October 1, 1984, § 562.076.1, R.S.Mo., 1986, a person in an intoxicated condition which is "involuntarily produced" so as to be deprived of the "capacity to know or appreciate the nature, quality or wrongfulness of his conduct," is not criminally responsible for his conduct. Second, evidence of mere drug or alcohol intoxication does not raise an intoxication defense; there must be an "extreme degree of intoxication." *State v. Bienkowski,* 624 S.W.2d 107, 108 (Mo.App.1981). The extreme degree of intoxication required under the statute is that the degree must be such that the person is "utterly devoid of consciousness or awareness of what he is doing" or "a total lack of capacity such that the bodily machine completely fails" or "so extreme as to suspend all reason." See *State v. Cole,* 662 S.W.2d 297, 301 (Mo.App. 1983) quoting *State v. Gullett,* 606 S.W.2d 796, 805–806 (Mo.App.1980). There must be "that degree of complete drunkeness which makes a person incapable of forming an intent to perform an act or commit a crime." *State v. Smith,* 684 S.W.2d 519, 520 (Mo.App.1985). Third, this court has said that to support an instruction on intoxication, evidence must be presented that tends to show defendant was so "intoxicated that he did not know what he was doing." *State v. Bienkowski, supra,* at 108; Notes on Use 4, MAI–CR2d 3.30.1. We have also held that if the defendant testifies "too much" and is able to recount the incident and the "story" so that his "recall" belies his intoxication theory and there is lack of evidence of the "severe" or "extreme" intoxication required by the statute, intoxication by drugs is not a defense and the court does not err in not instructing the jury on the issue. *State v. Bienkowski, supra,* 624 S.W.2d at 108; *State v. Smith, supra,* 684 S.W.2d at 520.

There was no substantial evidence introduced that at the time of the shooting incident appellant was in such an extreme state of intoxication so that he "did not know what he was doing." Appellant was able to recount much of the incident and much of the evening's events. Appellant remembered shooting McKinney and ac-

cording to the pathologist, that shot caused the victim's death. He acknowledged carrying a gun "for protection" and acknowledged that he fired one shot, but claimed to remember nothing after that. Appellant remembered sufficient details after smoking the $10.00 cigarette concerning the shooting which caused the victim's death that his claim of involuntary intoxication from unknowingly ingesting PCP after that is of no significant consequence. The evidence taken as a whole was sufficient to belie his theory of involuntary intoxication. Under all the circumstances in this case, the defenses of self-defense and involuntary intoxication are inconsistent. The trial court did not err in refusing to give an instruction on "involuntary intoxication" MAI–CR2d 3.30.2. This point is denied.

In his second point, appellant claims that the trial court erred in overruling his objections to the prosecutor's comments in closing argument that the prosecutor could have produced witnesses which would testify as to the victim's "good" reputation when the state did not put on any witnesses to rebut the appellant's evidence that the victim had a "bad" reputation. Appellant contends that these comments in closing argument referred to matters not in evidence. "By venturing dehors the evidence in the effort to counteract this proof [that the victim had a reputation for violence], the prosecutor prejudiced the jury on the defense of justification [self-defense]." Appellant cites *Forman v. State,* 190 Ala. 22, 67 So. 583, 586 (1914) which stated that during the progress of the prosecutor's argument, he was permitted to comment on the fact that no evidence had been developed to reflect upon the character of the deceased and "this being the situation of the evidence, the trial court might well have excluded this portion of the argument ... from the jury." But the *Forman* decision is not controlling since the court merely admonished the state.

It is axiomatic that in Missouri a prosecutor may only argue matters which are in evidence. *State v. Swing,* 391 S.W. 2d 262, 265 (Mo.1965); *State v. Long,* 684 S.W.2d 361, 365 (Mo.App.1984); *State v. Hooker,* 536 S.W.2d 487, 489 (Mo.App. 1976). But it is equally well settled that the trial court has wide discretion in ruling on counsel's closing argument. *State v. Hill,* 328 S.W.2d 656, 660 (Mo.1959); *State v. Wright,* 515 S.W.2d 421, 432 (Mo. banc 1974); *State v. Hooker, supra,* 536 S.W.2d at 490. The prosecutor may draw any inferences deducible from the facts in evidence. *State v. Laster,* 365 Mo. 1076, 293 S.W.2d 300 (Mo. banc 1956), *cert. den.,* 352 U.S. 936, 77 S.Ct. 237, 1 L.Ed.2d 167 (1957); *Hooker, supra,* 536 S.W.2d at 490; *State v. Heinrich,* 492 S.W.2d 109, 114 (Mo.App. 1973). Prosecutorial comment referring to facts not before the jury may be permissible, so long as it does not imply special knowledge of evidence pointing to the guilt of the defendant. *State v. Newlon,* 627 S.W.2d 606, 617 (Mo. banc 1982), *cert. den.,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982).

A conviction will be reversed for improper argument only if it is established that the argument and the comments of the prosecutor had a decisive effect on the jury verdict or the trial court abused its discretion to the prejudice of the defendant. *State v. Newlon, supra,* 627 S.W.2d at 616; *State v. Wren,* 643 S.W.2d 800, 802 (Mo. 1983); *State v. Sanchez,* 269 S.W.2d 46, 48 (Mo.1954). The trial court here was not convinced that this argument that the prosecutor "can dig up" witnesses to show that the victim had a "good" reputation, prejudiced the defendant in the context of the trial. We cannot conclude that the trial court abused its discretion in overruling the appellant's objections. There is no reversible error.

The judgment of conviction is affirmed.

SATZ, C.J., and CARL R. GAERTNER, J., concur.