**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Wardell J. LONG, Defendant–Appellant.**

**No. 51305.**

Missouri Court of Appeals,
Eastern District,
Division Five.

April 18, 1989.

Allen I. Harris, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Colly J. Frissell–Durley, Daryl Hylton, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

SIMEONE, Senior Judge.

This is an appeal from a judgment of conviction entered by the circuit court of the City of St. Louis, after a jury trial, by defendant-appellant Wardell Long, sentencing appellant on two counts of assault in the first degree, § 565.050, R.S.Mo. 1986, two counts of robbery in the first degree, § 569.020, and one count of armed criminal action, § 571.015. Appellant was sentenced to a total of forty years and committed to the Department of Corrections and Human Resources.

Appellant raises two points on appeal: that the court erred in (1) refusing to give certain offered instructions dealing with eyewitness identification and (2) failing to sustain appellant's objection to certain statements in the prosecutor's alleged inflammatory closing argument.[1] We affirm.

---

1. Originally appellant raised an additional point

—that the trial court erred in failing to dis-

Appellant was tried on January 15 and 16, 1986. The jury found him guilty on all counts. The following facts are sufficient for a disposition of this appeal.

On the evening of July 8, 1985, Robert L. Schaffner, and Michael Tracy, met after work at a local bar—The Office Lounge. They drank several beers and ingested "little white crosses"—caffeine pills. Earlier in the day, Schaffner smoked a "joint" of marijuana. After the two left the Office Lounge they went to another in Sauget, Illinois. Eventually the two, after stopping at Laclede's Landing in St. Louis wound up on "the Stroll" in St. Louis. There, four women waved "us over in the middle of the street." They asked if the men wanted "to date." The women left when a police car passed, but returned to the car. Then, Schaffner heard someone say to the women "back off" or "get back"—and a "guy" opened the car door and one man "took a knife," to Schaffner's throat. There were three men involved. One man on Tracy's side had a gun. The third man identified as appellant sat on the floorboards searching the glove compartment and Schaffner and told them they were being robbed. The men took some items from the vehicle —including a radar detector, Schaffner's wallet which he had placed under the floormat and Tracy's money in the cassette. During the events, Schaffner and Tracy were shot by one of the men. Tracy was shot in the abdomen. Schaffner was also shot in the abdomen. Despite being wounded, Tracy drove the two to a hospital for treatment and surgery. At the hospital, Schaffner identified the men from a picture book, and identified pictures of the appellant and the other two men. Appellant was also identified at trial as a participant in assault and robbery.

Michael Tracy's testimony was substantially the same as Schaffner's. He testified that he and Schaffner while on Washington Avenue were "hit by three guys." One man pushed his head back against the headrest. One man went through the glove compartment and a third man was on the floorboard searching. Tracy heard one of the men say something about killing him and Schaffner.

The appellant admitted that he was in the area where the robbery occurred, and saw the other two men involved in the robbery, but denied that he "had anything to do with the robbery."

After the evidence was completed, the court instructed the jury. Appellant offered two instructions, in the alternative, relating to identification testimony—that identification testimony should be received with caution, mistaken identification is not uncommon, and that certain matters should be considered in appraising identification testimony. The court refused to give these proffered instructions.

During the state's closing argument, the prosecutor referred to the defense counsel's argument dealing with identification and stated:

[Defense counsel] has suggested to you that these photographs were picked out because the police told them which ones to pick out. That's because that isn't true. They picked them out on their own, they picked them out independently and if that isn't enough then that's not enough for [one of the participants] and it's not enough for [another participant] and it's not enough for Wardell Long, put them back out on the street to do it again.

Defense counsel objected but the objection was overruled.

On appeal, appellant contends that the refusal to give the proferred instructions

charge the jury panel when the state used its peremptory challenges to strike four of five black jurors in a racially discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987) and *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987). On this point the state in its brief requested a remand for the purpose of determining whether the prosecutor acted in a discriminatory manner. Such a hearing was ordered and appellant ordered to file a transcript by November 30, 1988.

No transcript was ever filed and this court ordered that appellant had abandoned "any claims in connection with the *Batson* evidentiary hearing." Points II and III were therefore the only points to be docketed and argued.

relating to identification testimony and the alleged improper argument concerning putting "them back out on the street to do it again" is reversible error.

The thrust of appellant's contention on misidentification is that the condition of the victims was such that they could not adequately identify appellant.

Appellant contends that one of the offered instructions is authorized by *State v. Murphy*, 508 S.W.2d 269 (Mo.App.1974) and the alternative is authorized in the federal system. As to the closing argument, appellant contends that the prosecution cannot speculate as to future crimes a defendant might commit, was inflammatory and beyond the bounds of prosecutorial zeal.

The refusal to give the offered instructions relating to identification was not error.

■ Although at one time the giving of a cautionary instruction on identification may not have been an abuse of discretion, *State v. Murphy, supra*, 508 S.W.2d 269, it is now the settled principle under MAI–CR that a cautionary special instruction on the theory of misidentification is "unnecessary" in the state courts of Missouri because the subject is adequately covered by other MAI–CR instructions. This point has been presented many times and in each case it has been rejected. *State v. Quinn*, 594 S.W.2d 599, 605 (Mo. banc 1980); *Cf., State v. Murphy*, 415 S.W.2d 758 (Mo. banc 1967); *State v. Price,* 689 S.W.2d 380, 382 (Mo.App.1985); *State v. Moton*, 671 S.W.2d 347 (Mo.App.1984); *State v. McCain*, 662 S.W.2d 864, 866 (Mo.App.1983); *State v. Cotton*, 660 S.W.2d 365, 367 (Mo.App.1983); *State v. Hutton*, 645 S.W.2d 22, 24 (Mo. App.1982); *State v. Manning*, 634 S.W.2d 504, 506 (Mo.App.1982); *State v. Swink*, 620 S.W.2d 63, 64 (Mo.App.1981); *State v. Jones*, 607 S.W.2d 740, 742 (Mo.App.1980). No such instructions are required when other MAI–CR instructions have presented defendant's theory of innocence.

Here the court gave Instruction MAI–CR2d 2.01 relating to the believability of a witness, and the verdict directors directed the jury that if it found and believed that for the purpose of promoting or furthering the commission of an offense the defendant aided or encouraged the offense he is to be found guilty. Any misidentification went to the believability of the identification testimony. Schaffner and Tracy saw appellant in the vehicle, identified him from a photo album and at trial. The jury was aware of the factors which might have led to any alleged misidentification such as the length of time it took to recognize appellant, the use of liquor and "white crosses" and the victim's degree of certainty.

There was no error in refusing to give the offered instructions.

■ As to the closing argument of the prosecutor referring to "putting them back out on the street to do it again," we cannot conclude that the cause should be reversed on this ground in the total context of the trial. Appellant contends that speculating about future crimes is impermissible. *State v. Tiedt*, 206 S.W.2d 524, 527 (Mo. banc 1947); *State v. Heinrich*, 492 S.W.2d 109, 115 (Mo.App.1973).

It is axiomatic that an accused is entitled to a fair trial and that it is the duty of the prosecutor to see that he gets one. When argument goes beyond bounds so as to excite and inflame passion or prejudice, the argument is error. *State v. Taylor*, 508 S.W.2d 506, 514 (Mo.App.1974). It is however, equally well settled that the trial court has wide discretion in ruling on closing argument and in determining whether a comment is prejudicial. *State v. Hill*, 328 S.W.2d 656, 660 (Mo.1959); *State v. Carothers*, 743 S.W.2d 489, 492 (Mo.App.1988); *State v. Williams*, 721 S.W.2d 102, 107 (Mo.App.1986); *State v. Jackson*, 664 S.W. 2d 583, 585 (Mo.App.1984).

■ A conviction will be reversed for improper argument only if it is established that the argument or the comments had a decisive effect on the jury verdict or that the trial court abused its discretion. *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982) *cert. den.*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983); *State v. Williams, supra*, 721 S.W.2d at 107.

The trial court did not abuse its discretion in overruling objections to the comments by the prosecutor in the total context of arguments made by defense counsel and the prosecutor. The prosecutor's argument principally referred to adequate identification and was not the result of suggestive police practices. The trial court did not abuse its discretion in overruling an objection to this brief comment.

The judgment of conviction is affirmed.

PUDLOWSKI, C.J., concurs.

CARL R. GAERTNER, J., concurs in separate concurring opinion.

CARL R. GAERTNER, Judge, concurring.

I concur but write separately in order to express my continuing bewilderment over the persistent tactic of over zealous assistant circuit attorneys and prosecuting attorneys in inviting mistrials or reversals by exceeding well-established limitations governing final arguments. It has consistently been held improper to arouse in jurors a personal hostility toward, or a personal fear of the defendant, or for the prosecutor to speculate as to possible future conduct of the defendant. *See State v. Heinrich*, 492 S.W.2d 109, 114 (Mo.App.1973) and the cases cited therein. Nevertheless, in this case the assistant circuit attorney, in next to his last words to the jury, warns the jurors not to put the defendant "back out on the street to do it again." Such personalized argument goes beyond legitimate comment concerning crime prevention and evils to society in general. *See State v. Walls*, 744 S.W.2d 791, 798 (Mo. banc 1988). The prompt objection of defendant's trial counsel should not have been overruled.

Nevertheless, under the circumstances of this case I agree with the majority this error does not warrant reversal. The jury had before it defendant's own testimony in which he had admitted that between 1978 and 1985 he was convicted of two or three robberies, stealing, two assaults, resisting arrest and possession of marijuana. Defendant's attorney argued his client would not commit robbery because he was a pimp

and could "make more money from his girls." In view of all this, the uncalled for and unnecessary misconduct of the assistant circuit attorney in speculating that defendant would commit other crimes if put back on the street is not likely to have had a decisive effect upon the verdict. Accordingly, I concur.