STATE of Missouri, Respondent,

v.

Gale Wayne WILLIAMS, Appellant.

No. 20990.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 1997.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa A. Fischer, Asst. Atty. Gen., Jefferson City, for Respondent.

Before GARRISON, P.J., and PREWITT and CROW, JJ.

PER CURIAM.

Gale Wayne Williams (Defendant) appeals his convictions of second degree murder and armed criminal action, in violation of §§ 565.021 and 571.015, RSMo 1994, respectively. We affirm.

"Defendant does not challenge the sufficiency of the evidence to support the verdict, hence we recount only the evidence necessary to address the claims of error, viewing it in the light most favorable to the verdict." *State v. Crews,* 923 S.W.2d 477, 478 (Mo.App. S.D.1996). Viewed in that manner, the evidence indicated the following.

On June 20, 1993, Defendant and his friends were target shooting at Defendant's cabin when they were approached by James Quinton and three others. An altercation ensued after one of Quinton's friends asked to see one of the guns that was present. Following a fight between the opposing groups, Quinton and his friends left, vowing to return. Defendant's girlfriend called Defendant's brother, Darryl Williams (Darryl), to notify him of the situation. Darryl and two of his friends arrived at Defendant's cabin, but left a few minutes later.

As Darryl and his friends were driving toward "town," they met Quinton and his friends driving back toward Defendant's cabin. Although the testimony was varied concerning how it occurred, the two vehicles stopped and another fight broke out and eventually gunfire was exchanged. Defendant's girlfriend was in another car going toward town when she witnessed the fight in progress, and returned to Defendant's cabin to notify the others. Defendant arrived at the scene of the fight armed with a .22 caliber pistol, and ultimately fired two shots into the back of Quinton's head, killing him.

Defendant was arrested the following day at his mother's house, and was charged with first degree murder and armed criminal action. A jury found Defendant guilty of second degree murder and armed criminal action in March, 1996, and he was sentenced to concurrent terms of life imprisonment for the second degree murder charge and fifteen years for the armed criminal action charge. This appeal followed.

After Defendant's attorney filed his brief, this court granted Defendant leave to file a *pro se* supplemental brief. The *pro se* brief which he filed contains four points. We will initially address the two points raised in Defendant's attorney's brief (Points I and II), and then proceed to the points raised in Defendant's *pro se* brief (*Pro Se* Points I–IV).

## POINT I

Defendant's first point makes the following contention:

The trial court erred in overruling [Defendant's] motion to suppress his state-

ments to Deputy Squires regarding the location of guns on his mother's property, and to suppress the guns recovered from that location, and admitting the statements and guns into evidence, in violation of [Defendant's] privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments . . ., in that [Defendant's] statement was involuntary under the totality of the circumstances including the inherently coercive environment in which the statements were made because Deputy Squires threatened to tear [Defendant's] mother's house apart to find the guns.

Following Defendant's arrest, his girlfriend informed law enforcement officers that Defendant had hidden two weapons allegedly used in the shooting on his mother's property. Deputy Squires of the Crawford County Sheriff's Department obtained a warrant to search the property of Defendant's mother, but before executing it, approached Defendant who was in the Sheriff's office with his attorney. Squires testified at the suppression hearing about that conversation:

Q: All right. At the time you asked the Defendant, we're going back now to the time when the Defendant told you where the guns were, was he under arrest at that time?

A: Yes, he was.

Q: All right. That was after he was arrested, and when you asked the Defendant to tell you the locations of the pistol—

A: I didn't ask the Defendant to tell me the location of any weapons. . . . I told him that we were going to find the weapons if we had to take his mother's house apart board by board.

Q: All right. Well, didn't you say, I'll tear the f____ place apart?

A: I could very well have said that.

After consulting with his attorney, Defendant told Squires the location on his mother's property where the weapons could be found. Based on that information, the police recovered a .22 caliber pistol, a .20 gauge shotgun, and a box of .22 caliber ammunition.

Defendant moved to suppress his statement to Deputy Squires regarding the location of the weapons, as well as the weapons themselves as "fruits of the poisonous tree." Defendant alleges that his statement to Deputy Squires was a result of police coercion and was therefore involuntary.

■ Before addressing the substance of Defendant's claim, we must first consider whether the question was adequately preserved for appellate review. "In order to preserve for appellate review a claim regarding the admissibility of questioned evidence, a timely specific motion to suppress must be filed and, if such motion is denied, the issue must be kept alive by a timely specific objection at trial. In addition, the specific issue must be included in the motion for new trial." *State v. King*, 873 S.W.2d 905, 908 (Mo.App. S.D.1994) (citations omitted).

■ Following the trial court's denial of his motion to suppress, Defendant preserved the issue by making a timely objection at trial. However, Defendant's motion for new trial did not allege that his statement to Deputy Squires, and the fruits of that statement, should have been excluded as a result of police coercion.[1] Consequently, the issue was not properly preserved. *See State v. Hunn*, 821 S.W.2d 866, 869 (Mo.App. E.D. 1991). Our review is therefore limited to plain error. "Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Watts*, 813 S.W.2d 940, 944 (Mo.App. E.D.1991); *see also* Rule 30.20.

■ "The test for 'voluntariness' is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991)(quoting *State v. Lytle*, 715 S.W.2d 910, 915 (Mo.

banc 1986)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986).

■ The record before us does not reveal that kind of coercive activity which would make Defendant's statement involuntary. Even if Deputy Squires, with search warrant in hand, told Defendant that he would "tear the f___ place apart" in search of the weapons, this alone was not sufficient to make Defendant's resulting statement involuntary. Under the totality of the circumstances there is no indication that Defendant's will was overborne at the time he revealed the location of the weapons to Deputy Squires. His attorney was present with him when Squires approached Defendant, and he even consulted privately with his attorney before telling Squires the exact location of the weapons. Under these circumstances, we hold that the necessary predicate to an involuntary confession—police coercion—was not present. Defendant's first point is denied.

**POINT II**

In Defendant's second point relied on, he argues the following:

The trial court erred and abused its discretion when it overruled [Defendant's] objection during the State's closing argument analogizing [Defendant's] actions to Nazi genocide because the argument injected matters wholly inappropriate for the jurors' consideration and deprived [Defendant] of his right to due process of law and a fair trial before a fair and impartial jury, ... in that the argument inflamed the passions and prejudices of the jurors against [Defendant] by vile epithets associating his actions with the atrocities of the Nazis.

■ "When argument goes beyond bounds so as to excite and inflame passion or prejudice, the argument is error." *State v. Long*, 768 S.W.2d 664, 666 (Mo.App. E.D.

---

1. Although the motion for new trial did include several reasons why the trial court should have suppressed such evidence, those did not include the basis which is urged in this point.

1989). "It is however, equally well settled that the trial court has wide discretion in ruling on closing argument and in determining whether a comment is prejudicial." *Id.* "Absent abuse of discretion resulting in prejudice to the defendant, trial court rulings on such issues should not be overturned on appeal." *State v. Mahurin,* 799 S.W.2d 840, 844 (Mo. banc 1990), *cert. denied,* 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991). "A prosecuting attorney's statements must be plainly unwarranted and clearly injurious to the accused to constitute an abuse of discretion." *Id.* "A conviction will only be reversed on the basis of improper argument if it is established that counsel's improper comments had a decisive effect on the jury's verdict." *State v. Lumpkin,* 850 S.W.2d 388, 393 (Mo.App. W.D.1993).

Defendant challenges the following comments made by the prosecution during the rebuttal portion of its closing argument.

[PROSECUTOR]: . . . Now, there's an old saying about how—a person who was living in the times of the second world war and the Nazi invasion said that "When they came to take the Jews, I did nothing. When they came to take the invalid"—

[DEFENSE COUNSEL]: Judge, I'm going to object. This isn't in evidence. She tried to object to my apology(sic). This certainly wasn't in evidence.

[PROSECUTOR]: This is argument.

[DEFENSE COUNSEL]: It's not in evidence, Judge. It's not proper closing argument.

THE COURT: I understand it's not in evidence, and the Court will sustain your objection. However, I'm going to permit her to continue with her argument because the jury has been instructed. I'm sustaining your objection because it's not in evidence.

However, I'm going to permit her—save her time—to do whatever argument you want within reason. But comment on the evidence, if you would, please.

[PROSECUTOR]: Well, I'm getting to an analogy, Judge.

THE COURT: Proceed.

[PROSECUTOR]: Anyway, he said, "I did nothing when they came to take the Jews."

[DEFENSE COUNSEL]: Judge, I thought the objection was sustained.

THE COURT: It was, but I also said she could finish her argument. And the jury will recall that they are to decide what the evidence is, and what the attorney says is not evidence. So proceed.

[PROSECUTOR]: Your Honor—

[DEFENSE COUNSEL]: Well, I object.

[PROSECUTOR]:—again, I want to make sure it's okay. I'm just trying to draw an analogy, but I have to get out the saying before I can draw an analogy.

[DEFENSE COUNSEL]: Judge, if she's—if she's comparing the defendant and his family to the Nazis killing the Jews, I'm certainly going to be objecting.

THE COURT: Well, let's not redo World War II.

[PROSECUTOR]: I'm not doing that, Your Honor. Again, I'm trying to draw an analogy, but I can't get out the saying to do that.

THE COURT: Well, then I'm going to overrule your objection, [defense counsel]. Save her time. Proceed, please.

[PROSECUTOR]: Again, "When they came to take the Jews, I said nothing, I did nothing. When they came to take the crippled and the invalid, I said nothing, I did nothing. When they came to take the Christians, I said nothing, I did nothing. When they came to take me, I said nothing, I did nothing, because there was nobody there."

The point is, you don't acquit somebody just because maybe you don't like the victim or maybe you don't like the Faulkners. Because this man doesn't have the right to decide that, out of spite, he's going to kill somebody. And that's what happened.

 During Defendant's closing argument, it was argued that the victim and his friends "started the fight," while Defendant and his friends "weren't bothering anybody,

weren't breaking any laws, weren't causing any trouble." The State's analogy during its rebuttal was an express attempt to keep the jury from considering the victim's undesirable character traits in its deliberations concerning Defendant's guilt. "Although the comment in question may have been the product of prosecutorial overzealousness, it could not reasonably be held to have had a decisive effect upon the verdicts." *State v. Davis,* 825 S.W.2d 948, 952 (Mo.App. E.D. 1992). Therefore, the trial court did not abuse its discretion in overruling Defendant's objection. Defendant's second point is denied.

◼ We now turn to the four points submitted by Defendant in his *pro se* supplemental brief. Before analyzing these points, we note that "[*p* ]*ro se* appellants are bound by the same rules of procedure as are lawyers, and are not entitled to any indulgences they would not have received if represented by counsel." *Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App. E.D.1996).

### PRO SE POINT I

Defendant's first point in his supplemental *pro se* brief reads as follows:

> Due to the harangue between the prosecutor and the defense attorney, the presentation of the majority of the evidence became so confusing as to prohibit the defendant from receiving a fair trial under the Fifth, Sixth and the Fourteenth Amendments to the United States Constitution.

This point disregards the mandatory requirements of Rule 30.06(d), which provides, in pertinent part: "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous with citations to authorities thereunder." These requirements are explained in the seminal case of *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978):[2]

After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

◼ Defendant's first point relied on fails to identify any action or ruling of the trial court that is sought to be reviewed, nor does it state wherein and why the "harangue" between attorneys denied him a fair trial. Therefore, the point is not preserved for appellate review. *State v. Brown,* 924 S.W.2d 3, 5 (Mo.App. E.D.1996). In addition, we also note that Defendant did not preserve this claim of error by raising it in the trial court, either at trial or in his motion for new trial. *See State v. Bogard,* 836 S.W.2d 87, 88 (Mo.App. S.D.1992).

Despite Defendant's failure to preserve the claim for appellate review, we may exercise our discretion pursuant to Rule 30.20 to review this point for plain error. "Plain error encompasses only prejudicial error which so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Berry,* 916 S.W.2d 389, 395 (Mo.App. S.D.1996).

After reviewing the trial transcript, we find that Defendant's claim is not supported by the record. The point is denied.

### PRO SE POINT II

Defendant's second *pro se* point relied on reads as follows:

> In a first degree murder trial where the trial court ruled that there was sufficient cause to submit a second degree murder instruction, it was reversible error not to instruct the jury on voluntary manslaugh-

---

2. Although *Thummel* discusses points relied on in the context of Rule 84.04(d), Rule 30.06(d) is identical to Rule 84.04(d). "Briefing principles applicable to civil cases apply to criminal cases, albeit that the rules governing appellate briefs are separately stated in Rules 84.04 and 30.06." *State v. Wright,* 934 S.W.2d 575, 582 n. 5 (Mo. App. S.D.1996).

ter and violated the defendant's due process rights under the Fourteenth Amendment to the United States Constitution.

Again, Defendant's point is defective because it fails to state wherein and why the court erred in failing to instruct the jury on voluntary manslaughter. Although not preserved for review, we will review this point under the plain error standard.

According to Defendant, the trial court should have submitted a voluntary manslaughter instruction to the jury. However, during the instruction conference at trial, Defendant directed his counsel to request that such an instruction not be submitted to the jury. After an extensive examination of Defendant by his counsel and the court on the record to show that Defendant's request was voluntary, the voluntary manslaughter instruction was not submitted.

■ Pursuant to § 565.025.3, RSMo 1994, "[n]o instruction on a lesser included offense shall be submitted unless requested by one of the parties or the court." The trial court cannot be held to have erred when, under the circumstances, it followed the express desire of Defendant in not submitting a voluntary manslaughter instruction to the jury. Point denied.

### *PRO SE* POINT III

Defendant's third *pro se* point relied on provides the following:

> The [Defendant's] conviction for armed criminal action cannot stand due to the verdict director's failure to specify that a verdict was rendered on Count II armed criminal action thereby violating the Defendant's right under the Eighth and Fourteenth Amendments to the United States Constitution.

■ Defendant failed to raise this claim of error at trial or in his motion for new trial. Therefore, it is not preserved for appeal. *State v. Bogard*, 836 S.W.2d at 88. In addition, our review of this point is precluded for another reason. "A point written in violation of Rule 30.06(d) that cannot be understood without resorting to the transcript or argument section of the brief preserves nothing for review." *State v. Berry*, 916 S.W.2d at

395. This court has no duty to resort to the argument section of Defendant's brief to ascertain wherein and why he is claiming the trial court erred. As a result, Defendant's point preserves nothing for review. *State v. Stoer*, 862 S.W.2d 348, 355 (Mo.App. S.D. 1993).

### *PRO SE* POINT IV

Defendant's fourth and final *pro se* point provides the following:

> Due to the harangue between opposing counsels, the trial court entered into the picture by taking sides with the State's counsel by the court badgering the Defendant's witness Jeffrey Dale Renner and further participated in examining several of the Defendant's witnesses and none of the State's witnesses: the court further showed bias by allowing, over the objection of the Defendant, fourteen enlarged photographs of the deceased, and then showed reluctancy to admit four photographs of the defense witness Jeffrey Dale Renner which showed the wounds and injuries inflicted upon him: then the court exhibited impartiality toward the State by failing to sustain the Defendant's request for a mistrial when the court admonished the Defendant's witness Jeffrey Dale Renner. All of the aforementioned violations are prohibited by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

■ Of Defendant's four *pro se* points, this one comes closest to complying with Rule 30.06(d). Before addressing the merits, however, we do note that two portions of the point do not appear in the argument portion of Defendant's brief. Neither the reference to the photographs, nor to the court "participat[ing] in examining several of the Defendant's witnesses and none of the State's witnesses," appear in the argument portion of Defendant's brief. "Where the argument portion of a brief does not refer to an alleged error set out in the corresponding point relied on, that portion of the appeal is deemed abandoned." *State v. Wright*, 934 S.W.2d 575, 582 (Mo.App. S.D.1996). Therefore, we will only address the alleged "badgering" of Defendant's witness Jeffrey Dale Renner, as

well as the related failure of the trial court to grant Defendant's motion for mistrial.

Defendant cites two instances in his brief where the trial court "interject[ed] itself *sua sponte* " during the direct examination of one of Defendant's witnesses, Jeffrey Renner. Those two instances are set out below:

Q: And what were you doing to avoid the fire?

A: Ducking. Shortly thereafter, I ran—

THE COURT: Just a second, sir. He asked you what you were doing. You answered. Wait for his next question.

 * * * * * *

Q: Were you hospitalized for your injuries?

A: I admitted myself into the hospital. I was taken to the hospital. I never—

THE COURT: Excuse me. Now, the question is not that difficult. Were you hospitalized for the injury? "Yes" or "No." Is that a difficult question for you?

A: I was treated, not hospitalized.

THE COURT: No. That would be a different question. That would be, were you—

[DEFENSE COUNSEL]: Judge, can we approach the bench?

THE COURT: Yes, you may.

A: No.

THE COURT: Well, you got an answer.

[DEFENSE COUNSEL]: I'm going to object, Judge, and ask for a mistrial.

THE COURT: Just a second. Let me get the reporter over here.

(Counsel approach the bench and the following proceedings were had out of the hearing of the jury:)

[DEFENSE COUNSEL]: I want to make a record that the Court was addressing the witness in a loud and abusive manner and was making fun of him and within the hearing of the jury. And I believe that affects the credibility of this witness, Your Honor.

THE COURT: Hold your voice down, [defense counsel].

[PROSECUTOR]: Judge, that's not what I saw. I saw the Court trying to make the witness responsive to your questions, [defense counsel], and that's exactly what I think the record reflects.

THE COURT: Now, we're making a record over here out of the hearing of the jury. I'm going to hold you to strict rules of evidence. If you ask the question, I expect the witness to answer. And the witness has not answered a question directly, [defense counsel], from the time you've started on. I permitted you to joke with the witness for a while and it's getting out of hand. He will not respond. Your request for a mistrial is denied. Anything further?

[DEFENSE COUNSEL]: No

■■■■ The record clearly reflects that the trial court interjected during the witness's testimony because he was not being responsive to questions asked by Defendant's attorney. It is equally clear that the basis of Defendant's objection was not the trial court's interruption of the witness's testimony, but instead the *manner* in which the trial court addressed the witness.

It is axiomatic that a trial judge must not indicate by his comments or questions his opinion of evidence in the case. The standard for examining the conduct of the trial judge is whether the trial court's conduct is such as to prejudice the minds of the jury against defendant thereby depriving defendant of a fair and impartial trial. A defendant is entitled to absolute impartiality by the trial judge. There is no error as long as the trial judge does not express an opinion as to the nature, content or truthfulness of the evidence.

*State v. Fleer,* 851 S.W.2d 582, 593 (Mo.App. E.D.1993) (citations omitted).

■■■■ The trial judge did not express an opinion as to the nature, content or truthfulness of the evidence. He simply tried to get the witness to respond only to the questions asked of him. The point is denied.

Affirmed.