**STATE of Missouri, Plaintiff–Respondent,**

v.

**Phillip RATH, Defendant–Appellant.**

No. 23706.

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 2001.

Motion for Rehearing and Transfer Denied
May 22, 2001.

Application for Transfer Denied
June 26, 2001.

Kent Denzel, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.

SHRUM, Judge.

A jury convicted Phillip Rath (Defendant) of two counts of first-degree assault, § 565.050, and two counts of armed criminal action, § 571.015.[1] The trial court sentenced Defendant to prison terms of twenty years on each assault count and ten years on each armed criminal action count. Defendant's appeal presents four questions:

First, did the court err in allowing a jury argument that Defendant characterizes as an impermissible comment on Defendant's post-arrest silence?

Second, did the court err when it allowed victim testimony about the seriousness of her injuries?

---

1. All statutory references are to RSMo 1994, unless otherwise stated.

Third, did the court commit reversible error by allowing a closing argument that Defendant was a dangerous man and the victims "deserved peace."

Fourth, did the court "plainly err" by reciting in the sentence and judgment that Defendant was convicted of class A first-degree assaults rather than class B convictions?

We answer the first three questions in the negative, and we agree there was plain error as posed by the fourth question. Therefore, Defendant's first three points are denied, and because the fourth has merit, we remand for correction of the judgment as directed.

## FACTS

After Defendant met Christine Hembree ("Hembree") at their mutual place of employment in November 1998, a romantic relationship developed between them. Hembree ended the relationship in late winter or early spring of 1998 after learning Defendant had a criminal record. Defendant was not amenable to Hembree's decision and repeatedly called Hembree, followed her, and showed up at her home. In April 1999, Defendant went to Hembree's rural farm home in Dade County and entered through an unlocked door. When Hembree refused Defendant's request to move into her house, Defendant shoved her and inflicted bruises. This incident led Hembree to call law officers and ultimately to obtain a full order of protection through the circuit court. Although the order against Defendant contained broad prohibitions, he continued to call Hembree.

Because of her fear of Defendant, Hembree borrowed a dog from a friend, Alan Divine ("Divine"). Her purpose was to have the dog outside her home to warn her if Defendant approached. Divine and Hembree moved the dog and an item of furniture to Hembree's house in the early morning hours of May 24, 1999. Shortly after arriving at the house, Hembree and Divine saw Defendant slowly driving past. At 3:04 a.m., they again saw Defendant driving by on the highway, only this time he turned around and pulled into the driveway. Defendant parked his truck at an angle as to block Hembree's car. He then got out of his truck and walked to the back porch. By this time Hembree had armed herself with a .22 caliber rifle. Defendant, who was "very angry," kept telling Hembree they needed to talk, while Hembree insisted Defendant must leave. After 10 to 15 minutes of confrontational shouting, Defendant started to walk away. However, when Defendant reached Hembree's car, he turned and produced a 9 millimeter pistol from beneath his jacket. He then shot Hembree in the leg and Divine in the right thigh. Thereon, Hembree retreated into the house, and Divine fled around the house with Defendant in pursuit, firing his pistol. Hembree could not telephone for help because Defendant had disconnected the telephone lines from the house. Ultimately, Hembree and Divine escaped from the premises, albeit separately. Hembree went to one neighbor's house and Divine to another where they summoned help from law enforcement officials.

Defendant fled the crime scene, and ultimately was arrested in Joplin, Missouri. When arrested, he had the pistol used in the offenses. At trial, Defendant testified Hembree shot at him with her rifle while his back was turned, and that he shot Hembree in self-defense. He suggested that Hembree must have shot Divine with a gun other than her .22 caliber rifle.

The jury convicted Defendant of the crimes mentioned in the opening paragraph and after sentencing, he filed this appeal.

## STANDARD OF REVIEW

 Concerning alleged trial court errors that have been preserved, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Hutchison,* 957 S.W.2d 757, 761[1] (Mo.banc 1997). Issues that were not preserved but are claimed as error on appeal may be considered only if the court finds that manifest injustice or miscarriage of justice has resulted from the alleged error. *Id.* at 761[2].

## DISCUSSION AND DECISION

### POINT I: IMPROPER COMMENT ABOUT PRIVILEGE AGAINST SELF-INCRIMINATION

Defendant's first point complains about a prosecutor's remark made in the first part of his closing argument to the jury. Specifically, he objected when the prosecutor told the jury:

> "And then we have the story of Phillip Rath. Phillip Rath claims his story matches the physical evidence. Of course it does. Do you know why? He's had the advantage of seeing the physical evidence, the photographs. He's heard Christine testify. He's heard Allen Divine testify. He's read all the police reports. And he's had eleven months to think about this before—"

Defendant sought a mistrial on the ground that this was an "improper comment on the Defendant's right to remain silent." The court overruled Defendant's request for mistrial and denied his additional requests that the state "be prohibited from any further argument on that" and the jury "be instructed to disregard" the argument.

Defendant's first point maintains the trial court erred and abused its discretion in making these rulings. Defendant argues

"[t]he prosecutor improperly commented on [Defendant's] exercise of his privilege against self-incrimination because [Defendant] was not obligated to make any statement before trial, but the State's argument led the jury to see [Defendant] as less credible *because he did not explain his defense earlier."* (Emphasis added.)

 A defendant's post-arrest post-*Miranda* silence cannot be used as evidence to incriminate the defendant. *State v. Dexter,* 954 S.W.2d 332, 338 (Mo.banc 1997); *State v. Graves,* 27 S.W.3d 806, 811–812 (Mo.App.2000). An accused's right to be free from compulsory self-incrimination includes not only the prerogative to remain silent but also that such silence shall not be used to prove guilt, *see Graves,* 27 S.W.3d at 811–812, or to impeach his or her testimony. *State v. Sullivan,* 935 S.W.2d 747, 758–59[38] (Mo.App. 1996). "Standing alone, a prosecutor's references during closing argument to a defendant's post-arrest silence can merit reversal." *State v. Flynn,* 875 S.W.2d 931, 934[5].

 In reviewing a claim of an improper reference to an accused's post-arrest silence, an appellate court must consider the comment in the context of the entire argument. *State v. Lopez,* 836 S.W.2d 28, 34 (Mo.App.1992). When viewing the comments in context, it is clear Defendant has mischaracterized their nature. Here the questioned remarks came after the prosecutor reminded the jury it had "heard two stories[,]" one by both Hembree and Divine and another by Defendant. After rhetorically asking the jury who they were going to believe, the prosecutor explained it could consider Defendant's three felony convictions (manslaughter, possession of a firearm by a felon, and sexual assault of a child) in resolving credibility issues. He recounted for the jury the number of times Divine and Hembree had given their ver-

sion of the events of May 24, 1999, and then summarized their at-trial testimony. Just before the complained of remarks, the prosecutor told the jury: "Their basic stories have always been the same, because they're the truth."

■ This jury had to make a credibility determination. The prosecutor was not prohibited from commenting on Defendant's credibility. *See State v. Futo*, 990 S.W.2d 7, 15 (Mo.App.1999); *State v. Burrell*, 944 S.W.2d 948, 952[11] (Mo.App. 1997). If an accused testifies, his or her testimony is subject to argument on credibility. *State v. Jacobs*, 939 S.W.2d 7, 11[12] (Mo.App.1997). In such instances, a prosecutor can comment on the defendant's credibility as a witness and assert the improbability and untruthfulness of his or her testimony. *State v. Norville*, 23 S.W.3d 673, 685 (Mo.App.2000).

■ The initial inquiry when analyzing if a prosecutor has impermissibly commented on an accused's post-arrest silence is whether the jury's attention was called to the fact that the accused was silent. *See State v. Martin*, 624 S.W.2d 879, 884 (Mo.App.1981). When the remarks at issue here are viewed in the context of the entire argument, clearly the prosecutor was emphasizing the flaws and discrepancies in Defendant's version of the events of that night and the lack of credibility in his account. Nothing in the prosecutor's argument can be interpreted as telling the jury it should find Defendant less credible because Defendant never spoke up earlier. To the contrary, the prosecutor's comments attacked Defendant's credibility based on the time and opportunity Defendant had to tailor his testimony to the physical evidence. The statement came without a direct or even reasonably inferable suggestion on whether Defendant had remained silent or made statements. We find nothing in the prosecutor's remarks which can be construed as a reference, either direct or veiled, to post-arrest silence by Defendant or the exercise of his fifth amendment privilege against self-incrimination. *See Lopez*, 836 S.W.2d at 34–35. The trial court did not commit reversible error when it overruled Defendant's objection to this argument. Point I is denied .

## POINT II: ALLEGED ERROR IN ALLOWING VICTIM'S TESTIMONY ABOUT INJURY

Originally, the state charged Defendant with two counts of class A felony first-degree assault (knowingly inflicting serious physical injury) and two counts of armed criminal action. On the trial date, the state amended the assault counts to class B offenses, attempting to cause serious physical injury to Hembree and Divine.

At trial, the prosecutor asked Hembree: "Do you ... have any residual problems with your leg caused from this shooting?" Hembree answered positively and when the prosecutor asked what the problems were, Defendant objected on relevancy grounds. After the court overruled the objection, Hembree testified that her leg swells and "sometimes, it'll just kind of pop and ooze out some stuff." In his second point on appeal, Defendant asserts the trial court erred and abused its discretion when it allowed this evidence that the leg "popped" and "oozed" because it was irrelevant since the State had removed the element of serious physical injury from the case by reducing the assault counts from class A to class B felonies. Continuing, Defendant insists the evidence was presented "only to inflame the passions of the jury and cause them to convict [Defendant] out of sympathy for [victim] Hembree."

■ For evidence to be logically relevant, it should logically prove a fact in

issue or corroborate other relevant evidence that bears on a principal issue. *Hutchison*, 957 S.W.2d at 763[9]; *State v. Finster*, 985 S.W.2d 881, 891 (Mo.App. 1999). To be legally relevant, the probative value of the evidence should outweigh its prejudicial effect. *State v. Barriner*, 34 S.W.3d 139, 144–45 (Mo.banc 2000). In an analysis of the legal relevance of evidence, the required balancing of prejudicial effect and probative value lies within the sound discretion of the trial court, *State v. Mallett*, 732 S.W.2d 527, 534[5] (Mo.banc 1987), and an appellate court will only interfere when an abuse of a trial court's broad discretion is shown. *Hutchison*, 957 S.W.2d at 763[8].

The crime of class B felony first-degree assault of which Defendant was convicted, is described in § 565.050, as follows:

"1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person."

"2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony."

In developing his argument, Defendant recognizes that "the extent of a victim's injuries (or even whether the victim is injured at all) is not a necessary element of Class B felony first degree assault when a defendant is charged with knowingly attempting to cause serious physical injury to another person." *State v. Lauer*, 955 S.W.2d 23, 25 (Mo.App.1997). Moreover, Defendant recognizes that proof that a victim was wounded "is strong evidence of an attempt to kill or do great bodily harm." *State v. McMahan*, 821 S.W.2d 110, 112 (Mo.App.1991). Defendant argues for reversal, however, by claiming the testimony about the residual effect of the wound, i.e., leg "oozing" and "sometimes" popping, did not have any "tendency to directly establish [Defendant's] guilt" on this charge. Continuing, he asserts that "[s]howing the lasting effects of this wound did not advance the State's case by even the slightest amount as to whether or not this was a case of self-defense, the only real issue in the case." With this as his premise, Defendant suggests the " 'logical' relevance of the lasting nature of the wound was minimal if not nonexistent." He concludes by saying that even if the testimony "had some minimal logical relevance, its prejudicial impact greatly outweighed that insignificant amount." We disagree.

Evidence that Hembree was wounded logically tended to prove a relevant fact in issue, i.e., whether Defendant attempted to kill or do great bodily harm to Hembree. As stated in *McMahan*, proof that Hembree was wounded was "strong" evidence of Defendant's attempt to kill or do great bodily harm. 821 S.W.2d at 112. However, the presence of "strong" evidence in the record did not preclude further corroborating evidence on that issue. The "residual effect" evidence tended to corroborate other evidence presented of Defendant's attempt to kill or do great bodily harm to Hembree. *See Hutchison*, 957 S.W.2d at 763[8]. Among other things, it tended to show the wound was not an insignificant flesh wound or mere scratch. The "residual effect" evidence was logically relevant and the court did not err in its implicit ruling to that effect. Moreover, we find its probative value outweighed its prejudicial effect. No additional evidence about residual effects was presented, and the State never alluded to the permanent injury evidence during closing argument. Considering the plethora of evidence about Defendant's conduct toward Hembree, the sparse mention of

residual effects from the wound could not have been a source of jury sympathy for Hembree to the point of depriving Defendant of a fair trial. Point II is denied.

## POINT III: CLOSING ARGUMENT ABOUT FUTURE CRIME POTENTIAL

Defendant's third point complains the trial court committed reversible error in its rulings when Defendant objected to this closing argument by the prosecutor: "Phillip Rath is obsessive and dangerous. He's a dangerous person. They deserve peace." Defendant objected that this was a request for "specific deterrence," moved for a mistrial, and asked the court to restrain the prosecutor from that line of argument. The court denied Defendant's requests. The prosecutor then concluded her remarks without returning to such argument.

Defendant insists the prosecutor's argument was an impermissible and improper suggestion that the jury should convict Defendant to remove a dangerous person from the lives of victims Hembree and Divine. He urges reversal on the theory that the prosecutor's remarks had a "decisive effect on the jury because it solicited the jury to convict [Defendant], not for what he might have done, but so [the victims] could have 'peace;' so that he could not endanger them in the future."

 For a prosecutor to speculate about future crimes or possible future conduct of an accused is impermissible. *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 527–28 (1947); *State v. Hurst*, 845 S.W.2d 669, 671[3] (Mo.App.1993). However, reversal is not required in every instance in which a prosecutor steps beyond the boundary of proper argument. *State v. Gilmore*, 681 S.W.2d 934, 944[31] (Mo. banc 1984).

In *State v. Long*, 768 S.W.2d 664 (Mo. App.1989), the prosecutor made a closing argument in which he suggested the jury

not put "them back on the street to do it again." *Id.* at 665. The defendant's objection to the argument was overruled. In refusing to reverse Long's conviction, the eastern district explained:

"It is axiomatic that an accused is entitled to a fair trial and that it is the duty of the prosecutor to see that he gets one. When argument goes beyond bounds so as to excite and inflame passion or prejudice, the argument is error. It is however, equally well settled that the trial court has wide discretion in ruling on closing argument and in determining whether a comment is prejudicial."

"A conviction will be reversed for improper argument only if it is established that the argument or the comments had a decisive effect on the jury verdict or that the trial court abused its discretion."

"The trial court did not abuse its discretion in overruling objections to the prosecutor in the total context of arguments made by defense counsel and comments by the prosecutor. The prosecutor's argument principally referred to [separate issues of identification]."

*Id.* at 666[2,3] (citations omitted).

In *Hurst*, the prosecutor told the jury: "What I would ask you is that you not return a verdict of not guilty, and allow [Defendant], a dangerous person, to commit crimes such as this again ." 845 S.W.2d at 671. A timely objection to the comment was overruled. In affirming on appeal, the eastern district reasoned:

"The ... remark was not spoken in such terms as would spark personal fear in the jurors. Further, the prosecutor's argument focused principally on Victim's identification of Defendant and the corroborating details about the car and gun. Considering these factors, we find

612

[the] prosecutor's brief remarks could not have elicited such prejudice so as to have had a decisive effect on the case and the trial court did not abuse its discretion."

*Id.* (citation omitted). The *Hurst* court continued by noting that the evidence against the accused was overwhelming. After summarizing the evidence, it concluded: "Given the overwhelming evidence, we find no prejudice warranting reversal." 845 S.W.2d at 671[4].

Here, as in *Hurst*, the prosecutor's argument was not spoken in terms that would spark personal fear in jury members. Moreover, the prosecutor's argument focused principally on credibility issues, details corroborating the victims' testimony, and the jury instructions. Once Defendant objected to the "deserve peace" argument, the prosecutor told the judge at the bench she would say nothing further like this, and she did as promised.

Although Defendant suggests the evidence against him was not "overwhelming" in the sense described in *Hurst*, we disagree. Our account of the facts earlier in the opinion demonstrates otherwise. From the facts in this record, we conclude that the prosecutor's brief comments that "[h]e's a dangerous man" and "[t]hey deserve peace" could not have aroused such prejudice as to have had a decisive effect on the case. *See Hurst*, 845 S.W.2d at 671. *See also State v. Jones*, 227 S.W.2d 713, 719[18] (Mo.1950) (holding prosecutor's remark that accused was a dangerous man, not reversible error under the facts shown). Point III is denied.

**POINT IV: ERROR IN JUDGMENT AND SENTENCE IN RE FELONY CLASS**

As an alternative claim of trial court error, Defendant points out the trial court mistakenly recorded in the judgment and sentence that Defendant was convicted of two counts of class A felony first-degree assault. Defendant requests remand so that the judgment can be corrected to show his assault convictions as class B felony first-degree assaults. The State concedes the judgment is wrong. The State further points out that the judgment does not include the trial court's finding that Defendant was a prior and persistent offender, § 558.016.

Finding merit in the Defendant's fourth claim of trial court error, but no merit in other points on appeal, we remand with directions that the trial court correct the judgment to show (a) Defendant was adjudged guilty of two counts of the class B felony first-degree assault, and (b) Defendant was found to be a prior and persistent offender per § 558.016.

PARRISH, P.J., MONTGOMERY, J., CONCUR.